No. 00-482

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 190

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

BRUCE HOLTE HAGEN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and for the County of Sanders,
                The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Wendy Holton, Attorney at Law, Helena, Montana

        For Respondent:

                Hon. Mike McGrath, Attorney General; C. Mark Fowler,
                Assistant Attorney General, Helena, Montana

                Robert Zimmerman, Sanders County Attorney, Thompson Falls, Montana

Submitted on Briefs:  September 6, 2001

Decided:      August   29,   2002

Filed:

_____
                       Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Defendant, Bruce Holte Hagen, filed a petition for postconviction relief in the District Court for the Twentieth Judicial District in Sanders County to have his 1994 conviction for deliberate homicide and aggravated assault set aside based on ineffective assistance of counsel. The District Court dismissed the petition and on appeal, this Court affirmed in part, reversed in part, and remanded for an evidentiary hearing to consider those allegations not based on facts in the record. Following that hearing, the District Court issued its Findings of Fact, Conclusions of Law, and Amended Sentence, in which it granted in part and denied in part Hagen's petition for postconviction relief by affirming his conviction but amending his sentence. Hagen appeals the District Court's judgment. We affirm the District Court.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court err when it failed to review the entire record prior to entering its Findings of Fact, Conclusions of Law and Amended Sentence?

¶4 2. Did the District Court err when it concluded that Hagen's trial counsel provided reasonably effective assistance?

¶5 3. Did the District Court err when it concluded that Hagen's appellate counsel provided reasonably effective assistance?

### FACTUAL AND PROCEDURAL BACKGROUND

¶6 On May 12, 1994, Bruce Holte Hagen was convicted by a jury in the Twentieth Judicial District Court in Sanders County of

2

deliberate homicide in violation of § 45-5-102, MCA, and aggravated assault in violation of § 45-5-202, MCA. The charges arose from an incident at Hagen's home in which Alice Goodrich was shot and killed and James Enger was wounded. The District Court sentenced Hagen to life in prison for the deliberate homicide conviction and twenty years for the aggravated assault conviction, with ten years added to each sentence for use of a dangerous weapon. The District Court ordered that the sentences be served consecutively. Hagen's appointed trial counsel, Matt Pavelich, filed a motion for a new trial based on his failure to call a witness. The District Court denied Hagen's motion for a new trial. Hagen appealed the District Court's judgment. Stephen Nardi was appointed to represent him on appeal.

¶7 In *State v. Hagen* (1995), 273 Mont. 432, 434, 903 P.2d 1381, 1382 ("*Hagen I*"), Hagen raised two issues for review: (1) whether the District Court erred when it refused to give Hagen's proposed jury instruction on the justifiable use of force in defense of an occupied structure; and (2) whether Hagen was denied effective assistance of counsel. The ineffective assistance of counsel claim was predicated on four alleged failings by his trial counsel: (1) failure to object to a remark by the prosecutor during voir dire; (2) failure to request an instruction on Hagen's right to rely on appearances in support of his justifiable use of force defense; (3) failure to request an instruction on negligent homicide as a lesser offense; and (4) failure to call a witness who would have testified to prior inconsistent statements by a key State witness. We

3

affirmed the District Court on all issues. *Hagen I*, 273 Mont. at 445, 903 P.2d at 1389. A more detailed recitation of the factual background in this case can be found in *Hagen I*.

¶8 On April 14, 1997, Hagen filed a petition for postconviction relief, and alleged that both his trial counsel, Matt Pavelich, and appellate counsel, Stephen Nardi, were ineffective. The District Court dismissed all claims in the petition on June 13, 1997. Hagen appealed the dismissal, and in *Hagen v. State*, 1999 MT 8, 293 Mont. 60, 973 P.2d 233 ("*Hagen II*"), this Court affirmed in part and reversed in part. We held that certain allegations of ineffective assistance of counsel were not based on facts in the record, were properly raised in the petition for postconviction relief, and, therefore, an evidentiary hearing was necessary. All other allegations of ineffective assistance of counsel which were record-based were dismissed on procedural grounds.

¶9 On March 13, 2000, the District Court held an evidentiary hearing. On June 29, 2000, the District Court issued its Findings of Fact, Conclusions of Law and Amended Sentence. The District Court denied Hagen a new trial, but granted him partial postconviction relief by ordering that his aggravated assault sentence run concurrently with his deliberate homicide sentence. On July 11, 2000, Hagen appealed the District Court's judgment.

**STANDARD OF REVIEW**

¶10 The standard of review of a district court's denial of a petition for postconviction relief is whether the trial court's findings of fact are clearly erroneous and whether its conclusions

4

of law are correct.  *State v. Hanson* (1999), 1999 MT 226, ¶ 9, 296 Mont. 82, ¶ 9, 988 P.2d 299, ¶ 9.

¶11  Did the District Court err when it failed to review the entire record prior to entering its Findings of Fact, Conclusions of Law and Amended Sentence?

¶12  In Conclusion of Law No. 21, the District Court stated: "That in making its conclusions of law in these postconviction proceedings, the Court does not review the entire trial proceedings; . . . ."  Hagen contends that the District Court had an obligation to review the trial record since his claims were record-based, and its failure to review the entire record deprived him of due process and resulted in erroneous findings and conclusions.

¶13  Due process is "not a fixed concept but, rather, is one which must be tailored to each situation in such a way that it meets the needs and protects the interests of the various parties involved."  *Small v. McRae* (1982), 200 Mont. 497, 507, 651 P.2d 982, 988.  The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Connell v. State, Dept. of Social Services* (1997), 280 Mont. 491, 496, 930 P.2d 88, 91.  The concept of due process is a flexible one calling for such procedural protections as the particular situation demands.  *Sage v. Gamble* (1996), 279 Mont. 459, 464-65, 929 P.2d 822, 825.

¶14  Postconviction relief statutes, found in Title 46, Chapter 21, MCA, do not explicitly require that a district court review the entire record.  Here, the District Judge who presided over the

6

postconviction hearing was the same judge who presided at trial. Review of the relevant portions of the court record is of importance when a judge other than the trial judge presides over the postconviction hearing. However, that was not the case here.

¶15 Furthermore, we refuse to impose on district courts a full-fledged duty to review the *entire* record in *every* situation. District courts maintain a duty to review those portions of the record which are at issue in the postconviction proceeding. For a district court which presided over the trial phase of a criminal proceeding, that duty likely does not extend to the entire record. The scope of the duty is determined on a case by case basis. Here, because the petition for postconviction relief was before the same judge who listened to the trial testimony when it was presented, and given the extensive nature of the District Court's findings of fact and conclusions of law, we conclude that Hagen was not deprived of due process, and that the District Court did not err when it made its decision without reviewing the entire trial record.

## ISSUE 2

¶16 Did the District Court err when it concluded that Hagen's trial counsel provided reasonably effective assistance?

¶17 A petitioner seeking to reverse a district court's denial of a petition for postconviction relief based on a claim of ineffective assistance of counsel bears a heavy burden. *Dawson v. State*, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20. In evaluating claims of ineffective assistance of counsel, this Court has adopted

the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See Hagen II,* ¶ 10; *Dawson*, ¶ 20. The defendant bears the burden of first showing that his counsel's performance was deficient, which entails "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. To assess deficient performance, we apply the "reasonably effective assistance" test for whether a defendant's counsel acted within the range of competence demanded of attorneys in criminal cases. *State v. Leavens* (1986), 222 Mont. 473, 475, 723 P.2d 236, 237.

¶18 Second, the defendant must show that the deficient performance "so prejudiced the defendant as to deprive the defendant of a fair trial, a trial whose result is reliable . . . ." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In other words, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Dawson*, ¶ 20; *State v. Allen*, 2001 MT 266, ¶ 27, 307 Mont. 253, ¶ 27, 37 P.3d 655, ¶ 27.

¶19 In *Strickland*, the U.S. Supreme Court stated:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness

8

> claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697, 104 S.Ct. at 2069. Finally, a claim of ineffective assistance of counsel must be grounded in facts found in the record, not on "mere conclusory allegations." *State v. Hurlbert* (1988), 232 Mont. 115, 120, 756 P.2d 1110, 1113 (*citing State v. Tome* (1987), 228 Mont. 398, 403, 742 P.2d 479, 482).

¶20 Before addressing the merits of Hagen's ineffective assistance claims, it is necessary that we address Hagen's claim that the District Court's findings and conclusions regarding prejudice from trial counsel's performance were inconsistent.

¶21 In *Hagen II*, this Court remanded to the District Court for an evidentiary hearing to consider three issues: (1) whether trial counsel was ineffective for failing to investigate James Enger's reputation for turbulence, violence and trouble-making; (2) whether trial counsel was ineffective for failing to investigate or present significant impeachment testimony regarding Enger's credibility; and (3) whether trial counsel was ineffective for failing to interview and prepare witnesses prior to trial. The evidentiary hearing was held on March 13, 2000, and Bruce Hagen, Kendra Hagen (Bruce's daughter), and Reece Cobeen, a key prosecution witness, testified. Hagen's trial counsel did not testify. The District Court issued its Findings of Fact, Conclusions of Law, and Amended Sentence, and with respect to Hagen's trial counsel, made the following conclusions of law:

9

8. That Defendant's trial counsel could have done a better job of investigating and presenting testimony regarding an alleged reputation for violence and a prior criminal record on the part of Jim Enger, the victim of the aggravated assault charge.

9. That the Defendant may have suffered some prejudice as a result of Conclusion No. 8 with respect to defendant's claim of self defense of the aggravated assault charge involving Enger.

. . . .

12. That Defendant's trial counsel could have done a more thorough job of interviewing and preparing witnesses, and Defendant may have suffered some prejudice as a result thereof.

¶22 While the District Court concluded that Hagen's trial counsel could have done a "better" and "more thorough" job and, as a result, "may have suffered some prejudice as a result," the District Court also made the following Conclusions of Law:

6. That the Court holds that Defendant's trial counsel provided reasonably effective assistance.

. . . .

22. That Defendant has failed to show in these postconviction proceedings that there is a reasonable probability that but for the deficiencies complained of on the part of Defendant's trial and appellate counsel the results would have been different. This Court expressly holds that the results would not have been different.

23. That the Defendant received a fair trial and that the trial result is reliable . . . .

¶23 Therefore, it appears that the District Court concluded that Hagen's trial counsel's performance was in part deficient, but that the deficient performance did not so prejudice Hagen that it deprived him of a fair trial. Hagen contends these findings and conclusions are inconsistent and that the judgment that followed

10

must be reversed. However, it is entirely possible within the framework of *Strickland* to find attorney error which possibly prejudiced the defendant, yet conclude that such error did not rise to a level serious enough to result in a verdict unworthy of confidence. Such was the case here. The burden on the defendant under *Strickland* is a heavy one. The defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," while also showing that counsel's deficient performance was so prejudicial that he was denied a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The District Court concluded that Hagen's trial counsel's errors did not rise to that level. The controlling language of the District Court's conclusions of law are those that track the dispositive elements of the *Strickland* analysis. A finding that an attorney could have done a "better" or "more thorough" job and that a defendant may have suffered some prejudice as a result is not the equivalent of ineffective assistance of counsel pursuant to *Strickland*. Therefore, we conclude that the District Court's findings and conclusions are not substantively inconsistent and do not require reversal of the District Court's judgment.

*A. Failure to Investigate Enger's Reputation*

¶24 Hagen contends that his trial counsel failed to investigate or offer evidence of James Enger's reputation for violence, heavy drinking and trouble-making. Hagen asserts that the introduction of such evidence would have impacted Enger's credibility as a

11

witness.  According to Hagen, his trial counsel's decision not to pursue an investigation of Enger was based solely on his misunderstanding of the law and mistaken belief that such evidence would be inadmissible.  Based on that error, Hagen asserts his trial counsel rendered ineffective assistance of counsel.

¶25  The State, on the other hand, argues that while Hagen may have informed his trial counsel of Enger's reputation, the record is silent as to whether Hagen's trial counsel conducted any investigation into the matter.  The State also contends that any assertion that Hagen's trial counsel misunderstood the law is mere speculation, and that Hagen's trial counsel had sufficient tactical reasons to avoid introducing any evidence of Enger's reputation. The State's contentions are well taken.

¶26  Trial counsel has a duty to either conduct a reasonable investigation or make a reasonable decision that a particular investigation is unnecessary.  *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066.  Here, however, we cannot determine from the record whether Hagen's trial counsel investigated Hagen's assertions, and, if he did, what tactical reasons were considered for not introducing that information at trial.  The burden was on Hagen to demonstrate ineffectiveness and Hagen's trial counsel did not testify at the evidentiary hearing.  A silent record cannot rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *State v. Langford* (1991), 248 Mont. 420, 432, 813 P.2d 936, 946 (*quoting Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).  Therefore, we

12

conclude that ineffective assistance for failure to investigate or prove Enger's reputation has not been established.

*B.   Failure to Investigate Enger's Prior Criminal Acts*

¶27   Hagen next contends that had his trial counsel investigated Enger's background, he would have discovered a history of disorderly conduct.  Evidence was introduced at the hearing that Enger was convicted of criminal trespass in 1986 and disorderly conduct in 1987, in addition to misdemeanor convictions for theft and possession of a concealed weapon.  The District Court found that no evidence had been introduced as to what effect, if any, such evidence would have had on Enger's credibility as a witness. We agree that the relevancy of Hagen's criminal background was questionable considering the remoteness of his convictions and the fact that he was invited to the Hagen property by the Defendant's wife.  Most importantly, however, the record indicates that Hagen's trial counsel did conduct some sort of investigation into Enger's background.  At the hearing, Hagen himself testified as follows:

Q:      Did you tell Mr. Pavelich anything about Jim Enger's reputation for violence and troublemaking?

Hagen: Yes, I did.

Q:      And what did you tell him?

Hagen: I told him that he had a reputation for fighting and picking on people instead of – trying to be a bully, especially when he had been drinking. *And I also heard from Matt*

13

> [Pavelich] *himself that he had a criminal record, that they were checking on him in Plains for stealing from mailboxes.* [Emphasis added.]

Therefore, Hagen's trial counsel did perform some type of investigation into Enger's criminal record. Based on all the foregoing considerations, we conclude Hagen has not proven ineffective assistance of counsel for failure to investigate Enger's criminal background.

*C. Enger's Civil Lawsuit*

¶28 Hagen asserts that further investigation would have revealed that Enger had filed a civil lawsuit against Hagen which was pending at the time of Hagen's trial. As a result of that lawsuit, Hagen contends that Enger had a financial stake in the outcome of the trial. The State contends that the jury was aware that Enger suffered significant physical injuries from the shooting and could reasonably infer that Enger would seek monetary redress for his medical injuries.

¶29 We agree that disclosing a civil suit would have demonstrated a financial interest in the outcome of this prosecution and would have been relevant. However, the record does not disclose that counsel failed to investigate the suit or why counsel chose not to offer evidence of the suit, if he knew of it. Most critically, however, we are unable to conclude that evidence of the suit would

14

have produced a different result in the context of all the evidence offered at Hagen's trial. Therefore, we conclude that the District Court did not err by its resolution of this claim.

*D. Failure to Interview and Present Impeaching Testimony of a Critical Prosecution Witness*

¶30 Hagen asserts that his trial counsel failed to interview Reece Cobeen, a critical prosecution witness. In addition, Hagen contends that his trial counsel failed to bring to the jury's attention a pretrial statement that would have contradicted Cobeen's testimony, or offer any other evidence to impeach him. The State, on the other hand, contends that this issue was previously decided in *Hagen II*.

¶31 The issue presented to this Court in *Hagen II* was whether Hagen's trial counsel was ineffective for failing to investigate or present testimony to impeach both Cobeen and Enger. With regard to Cobeen, we stated: "We agree with the State that Bruce's ineffective assistance of counsel claim with regard to counsel's failure to investigate or present testimony impeaching Reece was raised and resolved during Bruce's direct appeal." *Hagen II*, ¶ 32 (*citing Hagen I*, 273 Mont. at 444, 903 P.2d at 1388). Therefore, we conclude that this claim is barred by principles of *res judicata*.

*E. 911 Transcript*

¶32 Hagen also contends that his trial counsel was ineffective for his failure to present evidence of Hagen's call to the 911 dispatcher immediately following the shootings. Hagen asserts that

15

the transcript of the phone call was the best evidence of his state of mind at the time of the incident. The 911 transcript revealed that Hagen told the dispatcher, "I was attacked in my house and I - I - I don't (?) like that. We need an ambulance and we need the police." The State contends that the best evidence of Hagen's state of mind at trial was from Hagen's own testimony.

¶33 The 911 transcript would have corroborated Hagen's testimony and may have been admissible as a prior consistent statement. *See* Rule 801(d)(1), M.R.Evid. However, we have previously stated that counsel has no obligation to present cumulative evidence. *State v. Allen*, 2001 MT 266, ¶ 29, 307 Mont. 253, ¶ 29, 37 P.3d 655, ¶ 29. Furthermore, we are unable to speculate why the evidence was not offered. Finally, even if there was no sound tactical reason for not offering the evidence, we are unable to conclude that its presentation would have led to a different result. Therefore, we conclude that the failure to offer the transcript is not a sufficient basis on which to set aside Hagen's conviction.

¶34 We conclude that the District Court did not err when it concluded that trial counsel's performance was reasonably effective and that any omissions of counsel were not sufficient to undermine confidence in the trial's outcome.

## ISSUE 3

¶35 Did the District Court err when it concluded that Hagen's appellate counsel provided reasonably effective assistance?

¶36 Hagen contends that his appellate counsel was ineffective for the following reasons: (1) he failed to raise issues regarding the

16

manner in which Hagen's mental health evaluations were obtained, the nature of those evaluations, and the dissemination of the evaluations to the District Court and the prosecution; (2) he failed to raise trial counsel's failure to object to the introduction of an autopsy report which referred to the cause of death as a "homicide"; (3) he failed to raise trial counsel's failure to object to the State's comments on Hagen's wife's invocation of spousal privilege; (4) he failed to raise trial counsel's failure to object to improper comments about Hagen's wife's credibility; (5) he failed to raise trial counsel's improper vouching for a prosecution witness during the cross-examination of another prosecution witness; (6) he failed to raise trial counsel's shifting of the burden of proof during closing argument; and (7) he raised trial counsel's failure to request a lesser included offense instruction on direct appeal rather than on postconviction relief. We will address each allegation in turn.

¶37 Claims of ineffective assistance of appellate counsel are analyzed, like those of trial counsel, according to the standard set forth in *Strickland*. *Dawson*, ¶ 147. "The petitioner must show that counsel's advice fell below an objective standard [of] reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the petitioner would have prevailed on appeal." *Dawson*, ¶ 147.

A. *The Mental Health Examination*

¶38 On October 25, 1993, Hagen's trial counsel moved the District Court for an order pursuant to § 46-14-202, MCA, to require Hagen

be examined by a licensed psychologist or psychiatrist to determine his fitness to proceed. Hagen was examined by William Stratford, M.D., and Herman Walters, Ph.D. Hagen alleges that prior to the examination, he was informed by his trial counsel that the District Court had ordered him to see a psychiatrist before the bond hearing. However, Hagen alleges he was not informed of his right to a confidential examination at the State's expense, or that his examination results could be used against him at sentencing. The evaluation results of both Dr. Stratford and Dr. Walters were shared with the District Court and the State. The District Court referred to the psychological reports and the presentence investigation report in the sentencing order.

¶39 Although the District Court concluded that the trial counsel's performance "may have been deficient in making Defendant's pre-trial psychological examination available to the prosecution and to the Court," it also concluded that "no prejudice resulted to the defense." The District Court also found that "there was no evidence introduced at the postconviction hearing that making the report of the psychological evaluation available

. . . had any effect on either the prosecution of the Defendant or his sentencing." Without such evidence, the District Court concluded that Hagen's appellate counsel was not ineffective for failing to raise the issue on direct appeal.

¶40 As the defendant, Hagen carries the burden of showing that but for appellate counsel's performance, the result of the proceeding would have been different. Here, however, Hagen has not identified

18

what information in the doctors' evaluations was damaging to his defense. Furthermore, we cannot conclude, based on facts before us, that Hagen's sentence was somehow lengthened based solely on the doctors' evaluation. While Hagen's psychological evaluation results deserved better protection, we cannot determine what prejudice occurred as a result of appellate counsel's failure and, therefore, conclude that the District Court did not err by rejecting Hagen's claim made on this basis.

*B. The Autopsy Report*

¶41 Hagen contends that his appellate counsel should have attacked his trial counsel's failure to object to the State's introduction of an autopsy report which characterized the nature of the case as a "homicide." According to Hagen, the medical examiner's report amounted to expert testimony that the cause of death was murder, which would have directly contravened his affirmative defense of justifiable use of force. Hagen contends that permitting such information without an objection or limiting instruction was a record-based error of his trial counsel that should have been raised on appeal by his appellate counsel.

¶42 However, it was an uncontroverted fact that Hagen killed Alice Goodrich. That killing qualifies as a homicide based on the general definition of the term. As the District Court found, "Black's [L]aw [D]ictionary defines homicide as the killing of one person by another." Following that definition, Black's Law Dictionary goes on to quote a criminal law treatise which states, "The legal term for killing a man, whether lawfully or unlawfully,

19

is 'homicide.' There is no crime of 'homicide.'" Black's Law Dictionary 739 (7th ed. 1999) (*quoting* Glanville Williams, *Textbook on Criminal Law* 204 (1978)). Furthermore, trial counsel explained the difference between "homicide" and the legal term "deliberate homicide" in his closing argument. We conclude that failure to object to use of the term in the report or request a limiting instruction was not ineffective and, therefore, we conclude Hagen's appellate counsel had no responsibility to raise the issue on appeal.

*C. Invocation of Spousal Privilege*

¶43 Next, Hagen contends that his appellate counsel should have raised on direct appeal his trial counsel's failure to object to the State's comments on Hagen's spouse's invocation of spousal privilege. Hagen asserts that the prosecution clearly questioned Gabby Hagen about why she would not offer a statement about her husband, in contravention of Rule 505, M.R.Evid. Those actions, according to Hagen, were patently improper because of the inferences that could be drawn from Gabby's decision not to offer a statement.

¶44 We analyze alleged prosecutorial misconduct in cases such as this to determine whether the language used was manifestly intended or of such a character that a jury would naturally and necessarily take it as a comment on the failure of the privileged individual to testify. *See State v. Dawson* (1988), 233 Mont. 345, 356, 721 P.2d 352, 359. After review of the record in this case, we cannot conclude that the jury would "naturally and necessarily" have

20

interpreted the comments of the prosecutor as comments on Gabby Hagen's invocation of spousal privilege. Therefore, we conclude that Hagen's appellate counsel did not err by failing to raise the issue on appeal.

*D. Inappropriate Opinion Testimony on Credibility*

¶45 The State introduced two videotapes which recorded police interviews of Hagen. After the first tape was shown to the jury, the prosecutor asked Officer Larry Kirby to describe inconsistencies he believed to exist between the two interviews, in an attempt to show that Hagen had changed his story to fabricate a defense. Hagen contends that this testimony amounted to a comment on Hagen's credibility which was inadmissible pursuant to the Montana Rules of Evidence and applicable case law. *See* Rules 701 and 702, M.R.Evid.; *State v. Webb* (1990), 243 Mont. 368, 792 P.2d 1097.

¶46 However, pointing out inconsistencies in a person's statements is not the equivalent of expressing an opinion on credibility. Furthermore, it is difficult to infer prejudice since the jury had the independent opportunity to review the same statements. Therefore, we conclude that appellate counsel was not ineffective for failing to raise this issue on appeal. *E. Improper Vouching for a Prosecution Witness*

¶47 Hagen's trial counsel elicited the following testimony of Deputy Jonathan Hansen on cross examination:

> Q: While you had encountered them in the bar and some talk about a shooting, did you feel Punky Cobeen was the kind of person who would keep them out of trouble later in the evening?

21

A:    I have never known him to be violent.  I've known

him to drink, but I've never known him to be a

criminal or be violent.

Hagen contends that no competent, experienced defense attorney would deliberately introduce evidence of a police officer's personal opinion regarding the character of a key prosecution witness.  That attorney error, Hagen contends, was prejudicial to his defense, and should have been raised on appeal.  Because it was not, Hagen asserts his appellate counsel was ineffective.  The State contends that Hagen's charge is meritless because Officer Hansen's statement that Cobeen was neither violent nor a criminal was not indicative of Cobeen's truthfulness.  According to the State, it was not vouching testimony.  The District Court found that "Deputy Hansen did not comment on Cobeen's credibility."

¶48 While this Court has warned against the introduction of improper vouching testimony, particularly by the prosecution, we conclude that the above-cited testimony does not constitute vouching testimony.  As the Ninth Circuit has stated, "introducing bolstering evidence is not the same as vouching for the witness; . . . ." *United States v. Meling* (9th Cir. 1995), 47 F.3d 1546, 1558.  The testimony cited above was more an example of character-bolstering evidence, not vouching.  Furthermore, there was only one instance cited and we simply cannot conclude based on that isolated instance that Hagen's trial counsel was ineffective or that Hagen was prejudiced by the remark.  Accordingly, we conclude that

22

appellate counsel was not ineffective for failing to raise this issue on appeal.

*F.  Closing Argument*

¶49  Hagen asserts that his appellate counsel erred when he failed to raise his trial counsel's comments during closing argument which purportedly misinformed the jury that the burden of proof had shifted to the defense.  During closing argument, Hagen's trial counsel stated:

> I know that the State is going to say, "Hey, you look at the elements of these crimes charged.  We don't need to prove motive.  We don't need to prove motive at all," and which is true.  Motive is not an element of either of the crimes charged.  As a matter of fact, we have to prove motive.  We have to prove that the motive was self-defense.  Well, so be it.  If it wasn't self-defense, what was it?"

Based on the above statement, Hagen contends the jury was erroneously led to believe that the defense had the burden of proof and, in effect, had to disprove the State's allegations.  The State, on the other hand, asserts Hagen's trial counsel was correct in noting that when self-defense is raised as an affirmative defense, the defendant does assume the burden of showing that the self-defense was justified and reasonable.

¶50  In *State v. Daniels* (1984), 210 Mont. 1, 16, 682 P.2d 173, 181, we stated the general rule with regard to burden-shifting as a result of a defendant raising an affirmative defense:

> The State has the burden of proving beyond a reasonable doubt every element of the offense charged, or any lesser-included crime within such charge; the defendant if he raises the affirmative defense [such as self-defense] has the burden of producing sufficient evidence on the issue to raise reasonable doubt of his guilt, . . . .

23

Therefore, in this case, the burden did shift to Hagen to produce sufficient evidence to raise reasonable doubt of his guilt based on his justifiable use of force defense. Hagen's trial counsel's comments were consistent with that shift of the burden. Furthermore, we presume that the jury follows the law as it is given, and in Jury Instruction No. 21, the jury was correctly instructed:

> The defendant has pleaded justification in the use of force in this case. The defendant has the burden of producing sufficient evidence of justification in the use of force to raise a reasonable doubt of his guilt. You are to consider the following requirements of the law in determining whether the use of force claimed by defendant was justified:
>
> . . . .
>
> [Lists five requirements.]
>
> . . . .
>
> You are further advised that even if you determine the use of force by defendant was not justified, the state still has the duty to prove each of the elements of the crime charged beyond a reasonable doubt.

Based on the foregoing, we presume that the jury was correctly informed of the law, and further conclude that Hagen's trial counsel was not ineffective based on the comments he made during closing argument. Therefore, we conclude that Hagen's appellate

24

counsel was not ineffective for not raising the issue on direct appeal.

*G.  The Instruction on Negligent Homicide*

¶51  Hagen next contends that his appellate counsel was ineffective for raising his trial counsel's failure to request a lesser included offense instruction on direct appeal rather than by postconviction relief.  Appellate counsel, according to Hagen, should have recognized that an evidentiary hearing was necessary, and, therefore, should have raised the issue by way of a postconviction proceeding.  While Hagen contends that evidence in support of his claim would have been presented at a postconviction hearing, he failed to establish what that evidence would have shown.  Furthermore, claims which can reasonably be raised on direct appeal "may not be raised, considered, or decided" in a postconviction relief proceeding.  § 46-21-105(2), MCA.  Had Hagen's appellate counsel not raised the claim, Hagen would have, in all likelihood, been procedurally barred from raising it by postconviction relief.  Therefore, we conclude that he was not ineffective for raising it on appeal.

*H.  Cumulative Error*

¶52 Finally, Hagen contends that the cumulative effect of appellate counsel's alleged errors caused him prejudice, even if any of the errors standing alone would not be sufficiently prejudicial.  However, having analyzed each of Hagen's allegations separately, we have concluded that in each situation, counsel either acted reasonably or his omission did not undermine

25

confidence in the outcome.  We also conclude that the combined effect of all the acts or omissions complained of did not undermine confidence in the outcome of Hagen's trial.

¶53  For the foregoing reasons, the judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE