# FILED

May 5 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 09-0503

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 98

KELLY DEAN WORTHAN,

      Petitioner and Appellant,

v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 07-51
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Colin M. Stephens; Smith & Stephens, P.C.; Missoula, Montana

      For Appellee:

        Hon. Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

        George Corn; Ravalli County Attorney; Hamilton, Montana

Submitted on Briefs:  March 10, 2010

Decided:  May 4, 2010

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Kelly Dean Worthan (Worthan) appeals from the order of the Twenty-First Judicial District Court, Ravalli County, denying his petition for post-conviction relief.

¶2 We consider the following issues on appeal:

¶3 *1. Whether Worthan's counsel's failure to produce Dr. Michael Scolatti for testimony at trial violated Worthan's constitutional rights to the effective assistance of counsel.*

¶4 *2. Whether Worthan's counsel's failure to ascertain the qualifications of expert witness David Stube violated Worthan's constitutional rights to the effective assistance of counsel.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 This case arises out of Worthan's trial and convictions for two counts of sexual intercourse without consent, felonies, in violation of § 45-5-502, MCA, two counts of incest, felonies, in violation of § 45-5-502, MCA, and one count of tampering with a witness, a felony, in violation of § 45-7-206, MCA. For these convictions, the District Court sentenced Worthan to a total of 130 years in Montana State Prison with 60 years suspended. Worthan appealed his convictions alleging that his trial attorney Kelli Sather (Sather) provided ineffective assistance of counsel. With respect to his initial appeal, we concluded that Sather's questioning of a social worker did not amount to ineffective assistance of counsel and that the record was insufficient to address Worthan's additional ineffective assistance of counsel claims. Accordingly, we deemed his additional claims appropriate for consideration in a petition for post-conviction relief.

2

¶6 On January 29, 2007, Worthan filed the pro se petition for post-conviction relief that is the subject of this appeal. Among other things, Worthan claimed that his rights to effective assistance of counsel were violated by Sather's failure to adequately investigate expert witness David Stube's (Stube) credentials and by her promise and subsequent failure to call Dr. Michael Scolatti (Dr. Scolatti) to testify. After an evidentiary hearing, the District Court denied Worthan's petition concluding that he failed to demonstrate ineffective assistance of counsel.

¶7 Worthan appeals.

## STANDARD OF REVIEW

¶8 This Court reviews a district court's denial of a petition for post-conviction relief to determine whether its findings of fact are clearly erroneous and its conclusions of law are correct. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861. Claims of ineffective assistance of counsel are mixed questions law and fact which this Court reviews de novo. *Whitlow*, ¶ 9.

## DISCUSSION

¶9 *1. Whether Worthan's counsel's failure to produce Dr. Michael Scolatti for testimony at trial violated Worthan's constitutional rights to the effective assistance of counsel.*

¶10 The right to effective assistance of "counsel in criminal prosecutions is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution." *Whitlow*, ¶ 10. When confronted with an ineffective assistance of counsel claim we apply the two-part test set forth in

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by this Court in *Whitlow*. Under this test, the defendant must demonstrate (1) that counsel's representation was deficient and (2) that counsel's deficiency was prejudicial to the defense. *Strickland*, 446 U.S. at 687, 104 S. Ct. at 2064; *Whitlow*, ¶ 10. In order to eliminate the distorting effects of hindsight, we have explained that judicial scrutiny of counsel's performance must be highly deferential. *Whitlow*, ¶ 15. Accordingly, the defendant "'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *See Whitlow*, ¶ 21 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Indeed, this presumption undergirds our conclusion that a defendant bears a heavy burden in order to prevail on a claim of ineffective assistance of counsel. *Whitlow*, ¶ 21. Having set out the appropriate analytical approach, we now turn to the first prong of our test which, as it applies to the case before us, requires that we determine whether Sather's failure to produce Dr. Scolatti as an expert witness was deficient.

¶11 With respect to the first prong, the District Court concluded that "[t]o the extent that Ms. Sather promised the jury that Dr. Scolatti would testify that [Worthan's Daughters] O.W. and/or K.W. were not credible, Ms. Sather's professional conduct was deficient . . . ." On appeal, Worthan maintains that the District Court properly determined Sather's conduct to be deficient under the first prong of the *Strickland* test. The State does not directly contest this conclusion. Rather, the State argues that, even assuming Sather acted deficiently by failing to call Dr. Scolatti after she promised the

4

jury she would do so, this deficiency did not prejudice Worthan and therefore did not violate his rights to effective assistance of counsel. We agree with the State that, if Sather's conduct did not prejudice Worthan, the issue of whether her conduct was deficient becomes immaterial. Accordingly, we turn our attention to the second prong of the *Strickland* test.

¶12 Under the second prong, the District Court must determine whether the failure to call Dr. Scolatti as a promised expert witness prejudiced Worthan's defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In its conclusion that Worthan's defense was not prejudiced the District Court reasoned that, rather than supporting Worthan, Dr. Scolatti's testimony would actually have damaged Worthan's case. Worthan maintains however, that this conclusion was in error. To make this argument, Worthan analogizes Sather's unfulfilled promise to call Dr. Scolatti to cases from other jurisdictions in which a defendant was deemed to have been prejudiced by counsel's failure to produce promised evidence or testimony.

¶13 Worthan relies first on *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988), in which the First Circuit Court of Appeals held that a violation of the right to the effective assistance of counsel occurred because the defendant's attorney did not fulfill his promise to the jury that he would call a psychiatrist to testify that during the killing the defendant was acting "without any appreciation of what was happening . . ." and "was like a robot programmed on destruction." *Anderson*, 858 F.2d at 17. Worthan next points to *State v. Moorman*, 358 S.E.2d 502 (N.C. 1987), in which the Supreme Court of North Carolina

5

held that it was a violation of the defendant's right to effective assistance of counsel when counsel promised to produce evidence that the defendant was incapable of engaging in sexual acts but failed to produce such evidence. Finally, Worthan presents *People v. Davis*, 677 N.E.2d 1340 (Ill. App. 1997), in which the Appellate Court of Illinois concluded that there was prejudice when the defense counsel failed to fulfill his promise to offer the defendant's testimony. Each of these cases however, can be distinguished from the facts presently before us.

¶14 In *Anderson*, the defense counsel failed to call a promised expert witnesses whose testimony he claimed would show that on the night of the killing the defendant was "walking unconsciously toward a psychological no exit . . . [w]ithout any feeling, without any appreciation of what was happening, [the defendant] on that night was like a robot programmed on destruction." *Anderson*, 858 F.2d at 17. In concluding that the defendant's rights were prejudiced, the *Anderson* court explained that "[t]he promise was dramatic, and indicated testimony strikingly significant." *Anderson*, 858 F.2d at 17. By comparison, Sather explained to the jury that

> [y]ou will also hear from Dr. Scolatti, who reviewed the forensic interviews of the three children that Dr. Miller did on the children. He has also done numerous forensic interviews and has worked with children and done this, and he comes to a little different conclusion than Dr. Miller. He may agree with some of the techniques she used; but in reviewing the videotapes and a lot of other information, he comes to a different conclusion on what he thinks the outcome of [O.W.'s] interview was.

Far from being dramatic and strikingly significant, Sather's rather generic description of Dr. Scolatti's testimony can hardly be said to have had the same prejudicial effect on the

6

jury as the "strikingly significant" statements in *Anderson*. Furthermore, in *Anderson* the impact of the defense counsel's unfulfilled promise was heightened because it occurred only one day before the defense rested. Whereas here, Sather's far less dramatic statement was made six days before Worthan's defense rested.

¶15 *Moorman* and *Davis* are also distinguishable from the case at bar. In *Moorman*, in addition to reasoning that the defense counsel's unfulfilled promise to present "one critical piece of evidence" was deficient, the court also referred to the defense counsel's lack of credibility as a result of his abuse of prescription drugs, apparent inattentiveness and sleeping at trial. Here, Sather made no similar claim that Dr. Scolatti's testimony would unequivocally demonstrate Worthan's innocence and there is clearly no contention that Sather was inattentive. In *Davis*, defense counsel promised the jury that the defendant, who was charged with murder, would testify as to his whereabouts on the night of the murder. Ultimately, counsel failed to call the defendant and the court concluded that this violated the defendant's right to the effective assistance of counsel. However, in contrast to Worthan's claims, the *Davis* court's conclusion that this deficiency was prejudicial turned on the fact that defense counsel had also failed to investigate the defendant's criminal history or to obtain a ruling on whether the defendant's prior drug conviction was admissible. In addition, the court noted that defense counsel's unfulfilled promise to have the defendant testify amounted to a failure to "present the most important piece of evidence he had promised to produce . . . ." Sather's generic comments regarding Dr. Scolatti's testimony are not comparable to the

7

defense counsel's promise to produce the defendant in *Davis*. Thus, we do not find *Anderson*, *Moorman* and *Davis* to be persuasive.

¶16 It is well established that in order to meet the second prong of the *Strickland* test the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Here, not only are the cases Worthan relies on distinguishable but the evidence does not support the conclusion that it is reasonably probable that, but for Sather's unfulfilled promise to present Dr. Scolatti, the result of the proceeding would have been different. In fact, as the District Court notes in its decision, far from punching holes in the State's case, Dr. Scolatti's testimony during sentencing actually supported the conclusion that the State forensic interviews were conducted in a professional and proper manner. Furthermore, we are not persuaded by Worthan's contention that he was prejudiced by reference to Sather's unfulfilled promise to call Dr. Scolatti in the State's closing and rebuttal arguments. Having sifted through the transcripts we find no reference in the State's closing or rebuttal arguments to either Dr. Scolatti or Sather's unfulfilled promise to call him as an expert witness. For these reasons, we affirm the District Court's conclusion that Worthan has failed to demonstrate that Sather's statements regarding Dr. Scolatti prejudiced his defense. Accordingly, we conclude that Worthan's rights under the United States and Montana

Constitutions to the effective assistance of counsel were not violated by Sather's unfulfilled promise to call Dr. Scolatti as an expert witness.

¶17 **2. Whether Worthan's counsel's failure to ascertain the qualification of expert witness David Stube violated Worthan's rights to the effective assistance of counsel.**

¶18 On appeal, Worthan argues that Sather's failure to discover that "Dr." Stube had received his Ph.D. from an unaccredited school and that he was therefore not a Doctor, rendered her assistance ineffective and prejudiced his defense. The State counters that Sather's investigation of Stube's qualifications as an expert were sufficiently thorough so as to preclude the conclusion that Sather was ineffective. In its resolution of the issue the District Court concluded that, under the first prong of the *Strickland* test, Worthan failed to demonstrate that Sather's performance was deficient. We agree.

¶19 Turning once again to the first prong of the *Strickland* test, which requires a determination of whether the attorney's actions were deficient, we begin by reiterating that "'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *See Whitlow*, ¶ 32 (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065). "[A] reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Whitlow*, ¶ 21 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

¶20 Here, while Sather failed to ascertain that Stube's credential was invalid, that failure does not fall outside the wide range of reasonable professional assistance in this instance. As the District Court notes, prior to Stube testifying at trial, Sather met with Stube, obtained and reviewed his curriculum vitae, discussed his Ph.D. degree with him

9

and satisfied herself that Stube was a qualified expert witness. The record also indicates that Stube represented to Sather at the time of their meeting that he had been qualified as an expert witness on approximately fifty previous occasions. Furthermore, Stube's sworn testimony during the State's examination indicates that he glossed over or even mislead Sather as to the status of his Ph.D. While we are mindful of counsel's duty to conduct a reasonable investigation, *State v. Hagen*, 2002 MT 190, ¶ 26, 311 Mont. 117, 53 P.3d 885, we are satisfied that in this instance, Sather performed her duties in a manner consistent with her responsibilities as defense counsel. By meeting with Stube and reviewing what she thought to be his legitimate credentials, Sather performed her basic duties as defense counsel. Thus, we affirm the District Court and conclude that Worthan has failed to overcome the strong presumption that Sather's conduct fell below the wide range of reasonable professional assistance. Worthan's rights to the effective assistance of counsel were not violated.

¶21     Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA O. COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

10