DA 11-0120

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 165

CITY OF DEER LODGE ex rel., THE MATTER OF CITY OF
DEER LODGE ORDINANCES 130 and 136:

SHERMAN ANDERSON and BONNIE ANDERSON, JOHN
MOLENDYKE and CHARLOTTE MOLENDYKE, JASON
JONES and QUINN JONES, MARK HATHAWAY and MARY
HATHAWAY, EMERY D. WESTON, DALLIS HUNTER and
MAGGIE HUNTER, THE REVEREND DAVID BAKER and
JANA BAKER, CHARLIE SEDMINIK and NANCY SEDMINIK,
STANLEY C. SWORDER, DR. DUSTIN RUBINK and KELLY
RUBINK, MICHAEL NASEATH and CAMELLIA NASEATH,
DR. DOUGLAS McLAWS and TIFFANY McLAWS, BRANT
PIERSON and HEIDI PIERSON, and JOHN COUTU and
CLEO COUTU,

        Plaintiffs and Appellants,

    v.

GARY W. CHILCOTT, BRIAN CHILCOTT,
TALYN LANG, ZOO MOUNTAIN NATURAL
CARE, INC., and CITY OF DEER LODGE,

        Defendants and Appellees.

APPEAL FROM:   District Court of the Third Judicial District,
                In and For the County of Powell, Cause No. DV 10-51
                Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           Douglas D. Harris, Douglas Harris Law Offices, Missoula, Montana

      For Appellees:

           Michael Kauffman, Curt Drake, Drake Law Firm, P.C., Helena, Montana
           Gregory C. Black, Corette, Pohlman & Kebe, Butte, Montana

Submitted on Briefs:  May 9, 2012

Decided:  August 3, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Sherman Anderson and other concerned residents of the City of Deer Lodge (hereinafter "Anderson") appeal an order of the Third Judicial District Court, Powell County, denying their petition for a writ of mandamus. We affirm.

¶2 Anderson raises the following issue:

¶3 *Did the District Court properly conclude that the City of Deer Lodge lacked a clear legal duty to revoke Zoo Mountain Natural Care, Inc.'s business license?*

¶4 Zoo Mountain Natural Care, Inc. (Zoo Mountain) formed as a Montana corporation in January 2010. Zoo Mountain formed for the business purposes of lawfully growing and selling medical marijuana in accordance with the 2009 version of the Medical Marijuana Act (MMA).

¶5 Gary Chilcott, president of Zoo Mountain, purchased a property located in Deer Lodge, Montana, on March 23, 2010, on behalf of the company. Zoo Mountain began moving marijuana plants into the property on April 3, 2010. It also brought over 300 registered medical marijuana patient cards onto the property in early April.

¶6 Zoo Mountain contacted the City of Deer Lodge (City) in March 2010, shortly before the move, to obtain a business license. The City was not issuing business licenses when this move occurred, however, due to a change from a calendar-year licensing system to a fiscal-year licensing system. The City previously had determined that it would waive the business license requirement for new applicants during this transition period. The City had decided it would resume issuing licenses on July 1, 2010. The City accordingly allowed Zoo Mountain

3

to operate lawfully without a business license until July 2010.

¶7    The City Council convened shortly after Zoo Mountain's move to Deer Lodge. Anderson expressed concern over Zoo Mountain's location at this meeting. He specifically disliked the fact that Zoo Mountain was located in a residential neighborhood, and that Zoo Mountain was located near the Church of Jesus Christ of Latter Day Saints.

¶8    The Council responded by enacting Emergency Ordinance 130 on April 9, 2010. This law banned the development of new commercial medical marijuana activity within 1,000 feet of any school, daycare, church, park, baseball field or youth recreational facility. Ordinance 130, an emergency ordinance, only governed for 90 days after its enactment. The City enacted a permanent ordinance, Ordinance 136, on July 6, 2010. Ordinance 136 largely mirrors Ordinance 130.

¶9    Meanwhile, the City issued a business license to Zoo Mountain effective July 1, 2010. The application defined the license holder as "Zoo Mountain Natural Care." The application described Zoo Mountain's operation as an "agricultural warehouse." The city clerk who received the application expressed uncertainty whether to issue the license. The city clerk conferred with Mayor Mary Fraley, who in turn consulted City Attorney Tiffany Heaton. Mayor Fraley ultimately instructed the clerk to issue Zoo Mountain a business license for unspecified reasons after discussing the matter with Heaton.

¶10    Anderson believed that the City's decision to issue the business license violated Ordinances 130 and 136. Anderson further believed that the City violated the 2009 version of the MMA when it issued the business license to a corporation, rather than to an individual.

4

Anderson sought a writ of mandamus from the District Court to require the City to revoke Zoo Mountain's business license.

¶11 The court declined to issue the writ. It concluded that the MMA provided no clear legal duty for the City to revoke the business license. It similarly concluded that the City Code, particularly Ordinances 130 and 136, contained no clear legal duty to revoke the business license. Anderson appeals.

## STANDARD OF REVIEW

¶12 A district court's decision to issue or deny a writ of mandamus presents a conclusion of law. *Bostwick Props. v. Mont. Dep't of Natural Res. & Conserv.*, 2009 MT 181, ¶ 15, 351 Mont. 26, 208 P.3d 868. We accordingly review the decision for correctness. *Bostwick,* ¶ 15.

## DISCUSSION

¶13 *Did the District Court properly conclude that the City of Deer Lodge lacked a clear legal duty to revoke Zoo Mountain's business license?*

¶14 A writ of mandamus "is an extraordinary remedy" to be granted only in "rare cases." *State ex rel Chisolm v. District Court*, 224 Mont. 441, 442, 731 P.2d 324, 324-25 (1986). A party who seeks a writ of mandamus accordingly possesses a "heavy burden." *State v. Bd. of Cty. Commrs.*, 181 Mont. 177, 179, 592 P.2d 945, 946 (1979). The party first must establish that he is entitled to performance of a clear legal duty by the party against whom it seeks the writ. Section 27-26-102(1), MCA. The party who seeks the writ also must establish that no speedy and adequate remedy exists in the ordinary course of law. Section 27-26-102(2),

5

MCA.

¶15     The District Court centered its analysis on the lack of a clear legal duty for the City to revoke Zoo Mountain's business license. The parties similarly focus their analysis on this requirement. We accordingly limit our inquiry to whether the City possessed a clear legal duty to revoke Zoo Mountain's business license.

¶16     A clear legal duty involves a ministerial act. *Beasley v. Flathead Cty. Bd. of Adjustments*, 2009 MT 120, ¶ 16, 350 Mont. 171, 205 P.3d 812. A clear legal duty exists, therefore, only when the law defines the duty with "such precision and certainty as to leave nothing to the exercise of discretion and judgment." *Beasley,* ¶ 17. Anderson presents three arguments to support his position that the City possessed such a clear legal duty to revoke Zoo Mountain's business license.

¶17     He first contends that Zoo Mountain, as a corporation, cannot qualify as an authorized caregiver under the MMA, and the City accordingly issued a license to an unlawful business. Anderson next contends that Zoo Mountain's license application contained misleading information that warrants automatic revocation pursuant to City Ordinance. Anderson finally contends that Ordinances 130 and 136 imposed on the City a clear legal duty to revoke the license.

¶18     We first note that any legal duty imposed by the 2009 MMA has been rendered moot by subsequent amendments by the legislature. The District Court relied on the MMA's 2009 version when it denied the writ. The legislature repealed the 2009 version shortly after the District Court's decision, but before Anderson had filed his opening brief on appeal. The

6

legislature replaced this version with the much more restrictive 2011 version of the MMA. Mont. Sen. 423, 62nd Biennial Sess. (Mar. 23, 2011).

¶19     Anderson contends that the legislature's action in 2011 does not render moot his argument that the City possessed a clear legal duty under the 2009 version of the MMA. He argues that the dispute remains capable of adjudication because the legislature's action constitutes only a non-substantial, amendatory change rather than a wholesale change to the statutes upon which he relies. *Plains Grains Ltd. Partnership v. Bd. of Cty. Commrs.,* 2010 MT 155, ¶¶ 26-28, 357 Mont. 61, 238 P.3d 332. He argues that the 2011 version of the MMA remains largely unchanged with respect to the inability of a corporation to qualify as a caregiver.

¶20     No question exists that the 2011 version of the MMA constitutes a wholesale change to the statutory scheme even if the current version retains holdover provisions from the previous version. *See* §§ 50-46-101, et seq., MCA (2009) (repealed); *compare* §§ 50-46-301, et. seq., MCA. Anderson requests that we look in isolation to the statutes upon which he relies despite this wholesale change. Anderson cites amendments to § 50-46-302(10)(a), § 50-46-307(1)(i), § 50-46-303(b), § 50-46-303(2), and § 50-46-308(a), MCA. Anderson's analysis contends that only a natural person, and not a corporation such as Zoo Mountain, may constitute a caregiver. Anderson points to no single statute, however, that expresses this restriction. Anderson instead relies upon his interpretation of the entire statutory scheme to reach his conclusion that a corporation cannot qualify as a caregiver under the MMA.

¶21     Anderson's argument, in effect, requires us to look at the entirety of the statutory

scheme to interpret the MMA. We simply cannot engage in this type of interpretation, however, when the legislature has changed so drastically the statutory scheme since the District Court's decision. *See* §§ 50-46-101, et seq., MCA (2009) (repealed); *compare* §§ 50-46-301, et. seq., MCA. For example, the concept of a "caregiver" no longer exists under the MMA. The MMA now recognizes only "providers." Section 50-46-302(10)(a), MCA. Similarly, the 2011 version now prohibits entities like Zoo Mountain from receiving remuneration for their services. Section 50-46-308(6)(a), MCA. This restriction effectively eliminates any commercial or business aspect to the providing of medical marijuana. These wholesale modifications to the MMA eliminate our ability to grant effective relief under these circumstances. *Country Highlands Homeowners Assn. v. Bd. of County Commrs.*, 2008 MT 286, ¶ 23, 345 Mont. 379, 191 P.3d 424. The legislature's action in enacting these wholesale amendments to the MMA renders this question moot.

¶22 We further determine that no clear duty exists through the City Ordinances. A writ of mandamus "will not lie to correct or undo an action already taken. An action already done cannot be undone by mandamus." *Beasley,* ¶ 15. It accordingly proves insufficient for Anderson to establish that the City incorrectly issued the license. Anderson instead must establish that the City possesses some clear legal duty under the City Code to revoke the business license.

¶23 Anderson notes that the City Code requires that "any license containing misleading information shall be automatically revoked." Deer Lodge City Code 5.02.070. Anderson contends that Zoo Mountain included inaccurate information in its application for a business

8

license. As a result, Anderson argues this ordinance places a clear legal duty on the City to revoke the business license.

¶24 Deer Lodge City Code 5.02.070 does not govern the misleading information in a license application. The ordinance's language applies only to misleading information contained in the actual license itself. Anderson fails to cite any misleading information contained within the business license issued to Zoo Mountain. This inability to point to misleading information in Zoo Mountain's business license leaves Anderson with no recourse under Deer Lodge City Code 5.02.070.

¶25 Anderson further contends that the City possessed a clear legal duty to revoke the license through Ordinances 130 and 136. Anderson fails to note, however, that neither ordinance contains a provision that would require the City to revoke a business license already issued to an applicant. These ordinances instead provide only where, and how, a medical marijuana business may operate in Deer Lodge.

¶26 Indeed, whether Zoo Mountain violated these ordinances—and should have its license revoked for the violation—rested within the City's sole discretion. The code provides that "[w]henever in the *judgment of the city*, the licensee under this chapter is conducting the licensed business in a manner that violates any ordinances, or regulations of the city, or in any manner detrimental to the public health, morals, or welfare, the city *may* suspend such license by notice to that effect. . . . ." Deer Lodge City Code 5.02.070(5)(A) (emphasis added). Thus, whether Zoo Mountain violated these Ordinances and should have its license accordingly revoked presents a matter of discretion for the City to determine in its

"judgment." The authority bestowed upon the City by Deer Lodge City Code 5.02.070(5)(A) to exercise its "judgment" to revoke an existing business license cannot be deemed a ministerial act. *Beasley,* ¶ 17. A writ of mandamus provides no avenue for relief under these circumstances. *See Jefferson County v. Dep't of Envtl. Quality,* 2011 MT 265, ¶ 26, 362 Mont. 311, 264 P.3d 715.

¶27 Anderson has failed to establish any clear legal duty that requires the City to revoke Zoo Mountain's business license. The District Court acted accordingly in denying the writ of mandamus.

¶28 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE

Justice James C. Nelson, concurring.

¶29 I join the Court's Opinion. With respect to Anderson's arguments under the MMA, however, I also note my special concurrence in *Med. Marijuana Growers Assn. v. Corrigan,* 2012 MT 146, ___ Mont. ___, ___ P.3d ___. Because state medical marijuana laws seek to legalize conduct that is violative of federal law, *see* 21 U.S.C. § 801 et seq., and because the Supremacy Clause of the United States Constitution renders contrary state laws such as

Montana's various medical marijuana acts unenforceable, *see* U.S. Const. art. VI, cl. 2,[1] the courts of Montana should not be required to devote any more time trying to interpret and finesse these state laws. *Med. Marijuana Growers Assn.*, ¶¶ 34-37, 39 (Nelson, J., concurring).

¶30   With these observations, I concur in the Court's decision.


/S/ JAMES C. NELSON



Justice Jim Rice, concurring.

¶31   I concur in the Court's decision and write to address a portion of the District Court's analysis. In denying relief, the District Court noted that the City's approach was to restrict new marijuana businesses but permit pre-existing businesses, and stated:

> That policy coincides with an approach virtually everyone learned as a child and which has a long history in the law. That general rule could be paraphrased as follows: "It's not fair to prohibit today that which was permissible yesterday without allowing to continue that which was permissible yesterday." Thus, important facts in this case are those which demonstrate

---

1 *See also Gonzales v. Raich*, 545 U.S. 1, 29, 125 S. Ct. 2195, 2212 (2005) ("[L]imiting the activity to marijuana possession and cultivation 'in accordance with state law' cannot serve to place respondents' activities beyond congressional reach. The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail."); *Arizona v. United States*, ___ U.S. ___, 132 S. Ct. 2492, 2500-01 (2012) ("From the existence of two sovereigns follows the possibility that laws can be in conflict or at cross-purposes. . . . [Under the Supremacy Clause, state law must give way to federal law under certain circumstances, including] cases where compliance with both federal and state regulations is a physical impossibility." (internal quotation marks omitted)).

that Respondents were engaged in permissible conduct before the prohibition was put into place and that there was no expansion. The analysis need not continue after that conclusion.

If this were the extent of the District Court's rationale, consideration of reversal would be necessary because the failure to "grandfather" existing businesses does not necessarily render new zoning impermissible. This might not be fair in the opinion of some, but it is the law. Municipalities regularly enact new zoning ordinances that may require pre-existing businesses to relocate. *See TJS of New York, Inc. v. Town of Smithtown*, 598 F.3d 17 (2d Cir. 2010). Thus, the legal analysis must continue beyond this conclusion.

¶32 The bigger problem in this case is its unusual posture. Typically, a municipality is seeking to enforce its ordinance, and the defending business challenges the validity of the ordinance, as in *TJS of New York*. Here, citizens are seeking to force the municipality to act, which, as the Court notes, is primarily a matter of the City's discretion. Opinion, ¶ 25. It is therefore not susceptible to mandamus.

/S/ JIM RICE

12