DA 10-0237

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 278

COLTON WILSON,

        Petitioner and Appellant,

v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 07-50
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Sean D. Hinchey, Hinchey & Hinchey, P.C., Kalispell, Montana

        For Appellee:

            Ira Eakin, Special Assistant Attorney General, Montana Department of
Corrections, Helena, Montana

            Mitchell Young, Lake County Attorney, Polson, Montana

                Submitted on Briefs:  September 29, 2010

                        Decided:  December 22, 2010

Filed:

            _____
                       Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Appellant Colton Lee Wilson (Wilson) appeals from an order of the Twentieth Judicial District Court, Lake County, denying and dismissing his petition for postconviction relief.  We affirm.

¶2     We review the following issue on appeal:

¶3     *Whether Wilson's medical treatment at Montana State Prison constitutes cruel and unusual punishment or offends his right to dignity under the U.S. Constitution or Montana Constitution.*

FACTUAL AND PROCEDURAL HISTORY

¶4     Wilson entered a guilty plea to felony assault with a weapon, § 45-5-213(1)(a), MCA, as part of a plea agreement.  Wilson stabbed a man in the neck with a knife.  The District Court imposed a six-year deferred sentence.  Wilson was eighteen.  Wilson has a long juvenile history and previously has been incarcerated.

¶5     The court ordered Wilson to complete the boot camp program at Treasure State Correctional Training Center (boot camp) as a condition of the deferred sentence.  The court emphasized in the sentencing order that the deferred sentence was very lenient given the seriousness of the crime.  The court had decided to give Wilson an opportunity to rehabilitate in light of Wilson's age and his parent's involvement.  The court warned Wilson that the court would sentence him to Montana State Prison (MSP) if he failed to complete boot camp or if he violated his parole.

2

¶6    Wilson has had behavioral and mental health issues throughout his adolescence. Numerous doctors have evaluated and diagnosed Wilson. These diagnoses include bipolar disorder, bipolar disorder with psychotic features, rapid cycling bipolar disorder, attention deficit hyperactivity disorder (ADHD), depression, impulsivity, grandiosity, cannabis dependence, alcohol dependence, and polysubstance dependence. Wilson periodically has taken prescription medication to treat these problems.

¶7    Wilson's complicated condition has resulted in a lack of consistent diagnoses or course of medication. Dr. William Stratford (Dr. Stratford) saw Wilson for consultative purposes related to Wilson's sentencing in 2007. Dr. Stratford later diagnosed Wilson with severe ADHD and rapid cycling bipolar disorder. Dr. Stratford prescribed three drugs to manage Wilson's illness—Abilify, Vyvanse, and Lamictal. Dr. Stratford testified that Wilson likely would fail in any rehabilitation program without his three prescribed medications.

¶8    Wilson entered boot camp in January 2009 when he was 18. Wilson had been taking Dr. Stratford's prescribed medications before he entered boot camp and his behavior reportedly had improved. The court ordered Wilson to continue taking his prescribed medications. Wilson arrived at boot camp without his prescription, or his medication, and, as a result, boot camp officials did not allow Wilson to take any medications at boot camp. The boot camp terminated Wilson within two weeks when he failed to follow the program rules, disrupted the program, and interfered with staff.

¶9     Wilson's probation officer recommended that the court revoke Wilson's probation. The court held a hearing to consider the petition to revoke. The hearing focused on Wilson's medications. All the parties expressed concern that the boot camp had not allowed Wilson to take his medications. The court, as a result, ordered the parties to present evidence at a second hearing to establish why the boot camp had not allowed Wilson to take his medications and how that factor had affected Wilson's ability to succeed at boot camp. The court again emphasized that the deferred sentence had been very lenient, and absent any convincing reasoning the court was "disinclined to extend yet another opportunity to [Wilson]."

¶10    The parties asked the court at the second hearing to give Wilson another chance to complete boot camp. The parties agreed to stabilize Wilson on his medications before sending him back to boot camp. Wilson's therapist, Kiely Howard, testified that she would work with the Department of Corrections (Department) to ensure that Wilson would receive the proper medical treatment. The court expressed frustration that Wilson had arrived at boot camp without his medication, and explained that "this type of behavior is entirely consistent with this entire case." The court eventually agreed to send Wilson to another rehabilitation program instead of MSP.

¶11    The court sent Wilson to the Missoula Sanction and Assessment Center (MASC) to complete a "pre-booter" program. MASC prepares offenders for boot camp. The court sent Wilson to MASC to monitor his medications and to get him adjusted to a prescription drug regime in accordance with MSP policies and Wilson's diagnosis. MASC staff, physicians,

and Department personnel worked together to assess Wilson's mental illness and to stabilize him on appropriate medications. Wilson did not succeed at MASC. The MASC program terminated Wilson for inappropriate behavior, and, as a result, Wilson did not make it to boot camp. The State of Montana (State) reinstated its motion to revoke Wilson's deferred sentence.

¶12 The court held another revocation hearing on September 10, 2009. Dr. Stratford testified at the hearing that Wilson could not succeed in any correctional program without his three prescribed medications. Wilson's record reveals a series of failures in rehabilitation programs where he had been allowed to take a variety of prescription medications, including programs that allowed Wilson to take Vyvanse, Abilify and Lamictal. Wilson again asked the court to place him in a rehabilitation program because MSP policies do not allow one of his prescribed medications—Vyvanse. The court, in light of Wilson's previous opportunities in rehabilitation programs and subsequent failures, committed Wilson to the Department for a term of twenty years with fifteen years suspended. The court concluded that Wilson would receive adequate mental health care at MSP. The Department placed Wilson at MSP.

¶13 Wilson entered MSP on September 23, 2009, and met that same day with Dr. David Schaefer (Dr. Schaefer), the psychiatric physician at MSP. Wilson had been taking two of the three medications that Dr. Stratford had prescribed—Abilify and Lamictal—when he entered MSP. Wilson had not been taking Vyvanse due to MSP policies. Dr. Schaefer affirmed that MSP bars Vyvanse "due to the risk to inmate health and the safe and secure operations of the prison." Dr. Schaefer explained that Vyvanse is a stimulant that is highly

abused in a prison setting. Dr. Schaefer further testified that Vyvanse is not an appropriate prescription medication for Wilson because the drug "is likely to worsen or contribute to manic behavior." Wilson later told Dr. Schaefer that he unilaterally had decided to stop taking Abilify and Lamictal.

¶14 Dr. Schaefer's diagnosis of Wilson, similar to the diagnoses of other doctors who had examined Wilson, differs from Dr. Stratford's diagnosis. Dr. Schaefer diagnosed Wilson with major depression, anxiety disorder with features of social phobia, polysubstance dependence, and antisocial traits. Dr. Schaefer prescribed Celexa for anxiety and Wellbutrin for attention span. Wilson took Dr. Schaefer's prescribed medications at MSP and his behavior reportedly improved. Wilson told Dr. Schaefer that the medications made him feel better. Wilson's mother called Dr. Schaefer to discuss Wilson's medication. She wanted him to restart Abilify, but Wilson told Dr. Schaefer he did not want to take Abilify. Wilson meets with a mental health technician at MSP once per month for his "Wellness Check."

¶15 Wilson filed a petition for postconviction relief on December 22, 2009. Wilson argues that the Department's denial of his necessary prescription medication entitles him to postconviction relief. Wilson also claims that the Department's denial of his medication violates his Eighth Amendment right against cruel and unusual punishment under the U.S. and Montana Constitutions and his right to individual dignity under the Montana Constitution. The District Court denied Wilson's petition and he appeals.

STANDARD OF REVIEW

6

¶16   We review a district court's findings of fact for clear error in postconviction relief proceedings and its conclusions of law for correctness. *Worthan v. State*, 2010 MT 98, ¶ 8, 356 Mont. 206, 232 P.3d 380. We review discretionary rulings in postconviction relief proceedings for an abuse of discretion. *Hamilton v. State*, 2010 MT 25, ¶ 7, 355 Mont. 133, 226 P.3d 588.

¶17   We follow a three step process to determine whether the district court's findings of fact are correct. We first will review the record to determine whether substantial evidence supports the district court's findings. Next, if substantial evidence supports the district court's findings, we will examine whether the district court misapprehended that evidence. The Court, finally, may disregard a district court's finding of fact if a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed. *Thibodeau v. Bechtold*, 2008 MT 412, ¶ 14, 347 Mont. 277, 198 P.3d 785.

DISCUSSION

¶18   We must address briefly two preliminary matters. Wilson argues that the State's untimely response violated Uniform District Court Rule 2(b), and, therefore, the District Court should have deemed the petition "well taken." Courts will assume an appellant's unopposed position is correct, however, only if facts in the record support the position. *Alden v. Bd. of Zoning Commrs.*, 165 Mont. 364, 365, 528 P.2d 1320, 1320 (1974). Moreover, a district court may dismiss a petition for postconviction relief if the petition, files, and records conclusively demonstrate that the petitioner is not entitled to relief.

Section 46-21-201(1)(a), MCA. We will review the record to determine whether Wilson is entitled to postconviction relief.

¶19 The State counters that Wilson may not use a petition for postconviction relief to challenge the alleged constitutional violations arising from the conditions of his confinement. The court did not address whether Wilson's petition for postconviction relief presented a procedurally appropriate claim in light of its determination that Wilson's petition presented the exact issue the parties had litigated at Wilson's revocation hearing on September 10, 2009. We affirm the District Court's denial of Wilson's petition without deciding whether § 46-21-101, MCA, offers an appropriate mechanism to challenge Wilson's confinement.

¶20 *Whether Wilson's medical treatment at MSP constitutes cruel and unusual punishment or offends his right to dignity under the U.S. Constitution or Montana Constitution.*

¶21 Wilson argues that the Department's action in not allowing him to have a necessary prescription medication—Vyvanse—constitutes cruel and unusual punishment and violates his right to individual dignity. Wilson argues that the lack of proper medication exacerbates his mental health issues and causes him to act out at MSP and thereby increase his sentence. Wilson asked the District Court to resentence him to a "private residential setting where [he] would be afforded his prescribed medications." Wilson did not present any new evidence. He instead attached the transcript from his final sentencing hearing on September 10, 2009, to support his petition.

¶22 Wilson presented expert testimony regarding his medical needs at his sentencing hearing on September 10, 2009. Dr. Stratford testified that Wilson's medication is mandatory for his function. Dr. Stratford also acknowledged that MSP does not allow the medication that he prescribed for security reasons. Accordingly, Dr. Stratford asked the court to allow Wilson to complete a rehabilitation program where he could take his prescribed medications instead of sending him to MSP, where he could not take Vyvanse.

¶23 The State submitted an affidavit from Dr. Schaefer, the Department's psychiatrist who treats Wilson at MSP. Dr. Schaefer explained why the Department does not allow Vyvanse at MSP and why he did not think Vyvanse would be a good prescription for Wilson. Dr. Schaefer testified that Vyvanse is a highly abused stimulant and that the Physician's Desk Reference contains a warning for Vyvanse due to the potential for abuse. Dr. Shaefer also explained that stimulants can worsen or contribute to manic swings, and, therefore, he did not think it was an appropriate medication for Wilson. Dr. Schaefer prescribed different medications to treat Wilson's mental illnesses. Dr. Schaefer reported improvement when Wilson took these medications.

¶24 The court denied Wilson's petition for postconviction relief on the grounds that the issues raised in the petition already had been decided. The District Court presided over numerous hearings in this matter. Many of these hearings focused on Wilson's mental health and medication issues. The parties presented the court with ample testimony and evidence on this issue.

¶25    A district court sits in the best position to observe and judge witness credibility. We will not second guess a trial court's determination regarding the strength and the weight of the evidence. *Thibodeau,* ¶ 19. The court did not find Dr. Stratford's expert testimony sufficiently compelling to conclude that Wilson could not succeed in the criminal justice system without Vyvanse.

¶26    Our review of the record reveals no reason to reverse the District Court's sentence. The court gave Wilson multiple opportunities to get stabilized on his prescription medication. The Department terminated Wilson from a pre-booter program that allowed Wilson to take all of Dr. Stratford's prescribed medications. Substantial evidence in the record supports the court's decision to commit Wilson to the Department and we do not believe the court misapprehended that evidence.

¶27    The court did not address, however, whether MSP policies that denied Wilson a prescribed medication violated the U.S. Constitution or the Montana Constitution. Wilson makes this argument the central issue on appeal. Wilson relies heavily on this Court's decision in *Walker v. State,* 2003 MT 134, 316 Mont. 103, 68 P.3d 872, to support his claim.

¶28    The Department, on behalf of the State, assumes responsibility for inmates' general well being at MSP. The Department must ensure that inmates' basic human needs are being met—food, clothing, shelter, medical care, and reasonable safety at MSP. *Walker,* ¶ 80 (citing *Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 2480 (1993)).

¶29    The Eighth Amendment to the U.S. Constitution applies to the states through the Due Process Clause of the Fourteenth Amendment and prohibits the infliction of "cruel and

unusual punishments." *Baze v. Rees*, 553 U.S. 35, 47, 128 S. Ct. 1520, 1529 (2008); U.S. Const. amend. VIII. Article II, Section 22 of the Montana Constitution mirrors the Eighth Amendment. We have found it proper to rely on federal jurisprudence as persuasive authority for interpreting a provision of the Montana Constitution that is similar to a provision of the federal constitution. *Kafka v. Mont. Dept. of Fish, Wildlife & Parks*, 2008 MT 460, ¶¶ 30, 162, 348 Mont. 80, 201 P.3d 8. We look to federal law for guidance on the issue of cruel and unusual punishment. *Quigg v. Slaughter*, 2007 MT 76, ¶ 18, 336 Mont. 474, 154 P.3d 1217.

¶30 The U.S. Supreme Court has developed a two part test that we have applied to determine when a prison official's alleged deprivation of medical treatment violates the Eighth Amendment. The inmate must demonstrate that he suffered (1) a serious deprivation that results in the denial of the "minimal civilized measure of life's necessities," and (2) that a prison official acted with deliberate indifference to the inmate's health and safety. *Quigg*, ¶ 19 (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994)).

¶31 Montana's Constitution also recognizes that all human beings have the right to individual dignity. Mont. Const. art. II § 4. The U.S. Constitution does not expressly provide for the right to individual dignity. We read together Montana's constitutional right to individual dignity and the right to be free from cruel and unusual punishment when both constitutional provisions are implicated "to provide Montana citizens greater protections from cruel and unusual punishment than does the federal constitution." *Walker*, ¶¶ 73, 75.

11

¶32    *Walker* set forth the standard for determining deliberate indifference as it applies to improper psychiatric care in Montana. *Walker*, ¶ 56. Wilson must show that prison officials "consciously disregarded a substantial risk of serious harm to [Wilson's] health or safety." *Id*. Prison officials deprive mentally ill inmates of the basic necessities of human existence when the conditions imposed "inflict a serious mental illness, greatly exacerbate mental illness, or deprive inmates of their sanity." *Walker*, ¶ 76.

¶33    Wilson has received continued and consistent medical visits from psychiatric staff at MSP. Dr. Schaefer met with Wilson and diagnosed him the day that he arrived at MSP. Dr. Shaefer's diagnosis and prescriptions differ from Dr. Stratford's diagnosis and prescriptions. Dr. Schaefer intentionally chose not to give Vyvanse to Wilson because he did not believe that it was an appropriate medication. Dr. Schaefer instead prescribed different medication to treat Wilson's mental illnesses—Wellbutrin and Celexa. Wilson's behavior reportedly improved and he told Dr. Schaefer that the medications made him feel better. The record does not demonstrate that the staff at MSP consciously disregarded a serious risk of substantial harm to Wilson's health.

¶34    Wilson also has failed to show that the conditions at MSP greatly have exacerbated his mental illness or deprived him of his sanity. Wilson reportedly has mental and behavioral problems at MSP, but Wilson had mental and behavioral problems in residential rehabilitation programs before being sent to MSP. We do not doubt that spending time in prison often exacerbates behavioral problems in young inmates. Nothing in the record

indicates, however, that the Department's actions, or inactions, at MSP greatly have exacerbated Wilson's mental illness.

¶35     The Dissent characterizes Wilson's medical history as having established a track-record of success on Dr. Stratford's medication. Dissent, ¶ 41. Wilson has traveled a revolving door of rehabilitation programs throughout his adolescence. Dr. Stratford reported Wilson's behavior had improved on his prescribed medications (Abilify, Lamictal, and Vyvanse), and Dr. Schaefer reported that Wilson's behavior had improved on his prescribed medications (Celexa and Wellbutrin). The District Court spent numerous hours at hearings listening to the parties discuss what medications Wilson did or did not need to succeed. The court also gave Wilson multiple opportunities to complete rehabilitation programs in lieu of sending him to MSP.

¶36     The Dissent further suggests the need to appoint counsel to investigate the conditions of Wilson's confinement and treatment similar to the Court's resolution of *Walker*. Walker initially sent a handwritten letter to the Court describing the conditions of his confinement that prompted the Court to act. *Walker*, ¶ 30. The Court deemed Walker's letter a petition for Writ of Mandamus and remanded to the District Court. *Walker*, ¶ 31. The Court ordered the District Court to appoint counsel to investigate, and, if necessary, file a petition for appropriate relief. *Walker*, ¶ 31.

¶37     Unlike Walker, however, Wilson had counsel. Wilson's counsel investigated Wilson's circumstances and secured the services of a qualified mental health expert—Dr. Stratford—to testify on Wilson's behalf. Wilson's counsel filed a petition for postconviction

13

relief. The District Court held numerous hearings on this issue and considered the arguments presented by Wilson's counsel and the State's response. The court determined that Wilson had failed to establish that he is entitled to postconviction relief. We agree.

¶38 Dr. Schaefer's decision to prescribe different medication did not deny Wilson the basic necessities of life. The record does not reflect that the Department disregarded a substantial risk of harm to Wilson's mental health. The Department's actions did not greatly exacerbate Wilson's mental illness. Substantial evidence in the record supports the District Court's decision to deny Wilson's petition for postconviction relief.

¶39 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH

/S/ PATRICIA COTTER
/S/ JIM RICE

Justice James C. Nelson dissents.

¶40 Respectfully, I must dissent from the Court's Opinion. Sadly, Wilson's is the typical story of a mentally ill inmate not receiving appropriate mental health care and then having to suffer the consequences of his, to be expected, bad behavior and acting out. This case has all the earmarks of another *Walker v. State*, 2003 MT 134, 316 Mont. 103, 68 P.3d 872.

¶41 In *Walker*, had this Court not intervened, and had we not fashioned a remedy, *see Walker*, ¶¶ 30-35, Walker would probably still be housed naked in a filthy, cement cell being treated like a prisoner in Abu Ghraib. *See Walker*, ¶¶ 18-29. I fear that Wilson's lot will be no better. While the Court pays lip-service to Wilson's inviolable right of human dignity, Opinion, ¶ 31, the fact is that Wilson is not receiving the medications that had a track record of actually working for him, Opinion, ¶ 8—Dr. Schaefer's diagnosis to the contrary notwithstanding.[1] *See* Opinion, ¶¶ 14, 23. And, contrary to the Court's Opinion, ¶ 35, when Wilson was being treated with the three medications prescribed by Dr. Stratford—Lamictal, Vyvanse, and Abilify—Wilson's mental health disabilities were stabilized. It is undisputed that Wilson was denied these three drugs while in DOC custody even though these medications were prescribed by his treating physician, Dr. Stratford. The record reflects that

15

the different drugs prescribed by DOC do not work—Wilson acts out despite taking these alternative drugs, and he is being punished accordingly.

¶42   Without proper medication, Wilson acts out. He receives warnings and write-ups jeopardizing his opportunity for parole or other Department programs. Wilson's treatment is akin to denying a diabetic his insulin, and then punishing him for going into shock.

¶43   Based on the record here, and as we did in *Walker*, I conclude that Wilson's right of individual dignity is being degraded, and that he is suffering cruel and unusual punishment at the hands of the State of Montana prison system.

¶44   I would do what we did in *Walker*. We should fashion a remedy; we should remand this case to the District Court with instructions to appoint counsel to investigate the conditions of Wilson's confinement and treatment, and, if warranted, to file a petition for appropriate relief in the District Court. *See Walker*, ¶ 31.

¶45   I respectfully dissent from our failure to do so.

/S/ JAMES C. NELSON

---

[1] Dr. Schaefer was also, ironically, Walker's MSP mental-health-care provider. *See Walker*, ¶¶ 13, 57.