DA 12-0371

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 102

LINDA PAYNE,

      Plaintiff and Appellant,

   v.

BERRY'S AUTO, INC.,

      Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District,<br>In and For the County of Yellowstone, Cause No. DV 12-405<br>Honorable Russell C. Fagg, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            D. Michael Eakin; Montana Legal Services Association; Billings, Montana

      For Appellee:

            Peter T. Stanley; Attorney at Law; Billings, Montana

                    Submitted on Briefs:  December 19, 2012

                              Decided:  April 16, 2013

Filed:

                   _____

                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Linda Payne (Payne) appeals the judgment of the Thirteenth Judicial District Court, which affirmed the holding of the Yellowstone County Justice Court, that Berry's Auto, Inc. (Berry's) disclaimed implied warranties for a used vehicle sold to Payne. Although we conclude that Berry's failed to effectively disclaim implied warranties on the vehicle, we nonetheless affirm the District Court on alternate grounds. We address the following issues:

¶2 *1. Did Berry's effectively disclaim implied warranties of a used vehicle under § 30-2-316, MCA, when the transaction included purchase of a service contract for the vehicle?*

¶3 *2. Did the District Court err by affirming the Justice Court's denial of Payne's implied warranty claim?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Payne, a resident of Dawson County, purchased a used 1997 Ford Explorer from Berry's in Billings on September 4, 2007. Payne also purchased an extended service contract for the vehicle for an additional cost of $1,870.00. Payne signed several transactional documents, including the Buyer's Guide, the Retail Installment Contract, the Retail Purchase Agreement, and the Extended Service Contract.

¶5 The Buyer's Guide is a double-sided form designed to be affixed to the window of a used vehicle offered for sale and identifies the subject 1997 Ford Explorer. A section of the Buyer's Guide is labeled "Warranties for this Vehicle" and sets forth various statements about the transaction that are placed beside boxes to be checked if the statement is applicable. The first statement reads: "AS IS – NO WARRANTY. YOU

2

WILL PAY FOR ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." The box next to this statement was checked. Boxes next to statements describing full and limited warranties were not checked. However, the box next to the following statement was checked: "SERVICE CONTRACT: A service contract is available at an extra charge on this vehicle. Ask for details as to coverage, deductible, price, and exclusions. *If you buy a service contract within 90 days of the time of sale, state law 'implied warranties' may give you additional rights.*" (Emphasis added.)

¶6 The Retail Installment Contract and the Retail Purchase Agreement contain similar statements addressing warranties. The Retail Installment Contract reads:

> Warranties Seller Disclaims. You understand that the seller is not offering any warranties and that there are no implied warranties of merchantability, of fitness for a particular purpose, or any other warranties, express or implied by the seller, covering the vehicle unless the seller extends a written warranty or service contract within 90 days from the date of this contract.

The Retail Purchase Agreement warranty clause states:

> We are selling this Vehicle to you AS-IS and we expressly disclaim all warranties, express or implied, including any implied warranties of merchantability and fitness for a particular purpose, unless the box beside "Used Vehicle Limited Warranty Applies" is marked below or we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction.

¶7 The Extended Service Contract was offered through Wynn's Extended Care, Inc., of Brea, California (Wynn's). The Contract was discussed and sold by the same Berry's salesman who negotiated the sale of the vehicle to Payne. The price of the service

contract was included in the amount Payne financed, but was paid to Wynn's. The Extended Service Contract contains a clause stating, "[t]his Contract is not valid unless signed by both You and an authorized representative of the Selling Dealer." The Extended Service Contract lists Berry's as the selling dealer and was signed by both Payne and the Berry's salesman.

¶8 On September 25, 2007, Payne returned the Explorer to Berry's for minor repairs, which Berry's completed. Payne picked up the Explorer the next day and, while driving on Interstate 94 to Glendive, the engine began making an abnormal sound and then stopped entirely. Payne contacted Berry's and, after initially supplying Payne with a loaner vehicle, Berry's told Payne it would not be responsible for repairs and that she should contact Wynn's. On October 19, 2007, Wynn's initially declined to cover the cost of the engine repair.[1]

¶9 Payne filed a complaint in Justice Court in Yellowstone County in September 2009 seeking damages for Berry's failure to honor implied warranties of the vehicle and for committing an unfair trade practice. A bench trial was held on October 12, 2011. The Justice Court issued Findings of Fact, Conclusions of Law, and a Judgment. It concluded that "[Berry's] did not provide Payne a written warranty. The used vehicle was purchase[d] without a written warranty. The vehicle was purchased 'as-is' without a warranty. The 'Buyer's Guide' affixed to the vehicle and signed by Payne made it clear to Payne assumed (sic) the risk and responsibility for repairs." The Justice Court further

---

[1] Payne testified at trial that negotiations with Wynn's about the matter were ongoing.

concluded that "Payne had the option to obtain a service contract from Wynn to cover repairs and breakdowns. Implied warranties do not apply unless the service contract is made with the seller of the vehicle. 15 U.S.C. § 2308(a)(2)[.] Payne purchased the service contract from Wynn not Berry. If the breakdown is one covered under the service agreement, Payne should seek redress with Wynn, not Berry."

¶10 Payne appealed the Justice Court Judgment to the Thirteenth Judicial District Court. The District Court, upon a review of the Justice Court record and the parties' briefing, affirmed the Justice Court, reasoning:

> The extended service contract is clearly between [Payne] and Wynn's. Berry's did not "make any written warranty to the consumer," nor did Berry's "enter into a service contract with the consumer." Wynn's was the supplier referenced in 15 U.S.C. § 2308(a). Just because Berry's offered the contract and sold the contract to [Payne], does not mean Berry's was responsible for that contract.

Payne appeals.[2]

## STANDARD OF REVIEW

¶11 "'In an appeal from a justice court established as a court of record, the district court functions as an appellate court and the appeal is confined to a review of the record and questions of law. . . . [B]oth the District Court and this Court review the Justice Court's factual findings for clear error and its legal conclusions for correctness.'" *Stanley*

---

[2] Berry's did not file an appellee's brief in answer to Payne's briefing or otherwise participate in this appeal. Pursuant to M. R. App. P. 13, when the appellee fails to file a brief, this Court shall "take the appellant's versions and positions as being correct if they are in fact supported by the record." *See Alden v. Bd. of Zoning Comm'rs*, 165 Mont. 364, 365, 528 P.2d 1320, 1320 (1974); *see also Wilson v. State*, 2010 MT 278, ¶ 18, 358 Mont. 438, 249 P.3d 28. Before the Justice Court and the District Court, Berry's raised additional legal defenses that we do not consider because of its failure to participate in the appeal.

*v. Lemire*, 2006 MT 304, ¶ 25, 334 Mont. 489, 148 P.3d 643 (citation omitted).  We conduct a de novo review of a court's mixed questions of law and fact.  *Blackmore v. Dunster*, 2012 MT 74, ¶ 6, 364 Mont. 384, 274 P.3d 784; *BNSF Ry. v. Cringle*, 2012 MT 143, ¶ 16, 365 Mont. 304, 281 P.3d 203.

¶12    "We will not reverse a district court when it reaches the right result, even if it reached that result for the wrong reason."  *Yellowstone River LLC v. Meriwether Land Fund I, LLC*, 2011 MT 263, ¶ 58, 362 Mont. 273, 264 P.3d 1065 (citing *Wells Fargo Bank v. Talmage*, 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275).

## DISCUSSION

¶13    *1.  Did Berry's effectively disclaim implied warranties of a used vehicle under § 30-2-316, MCA, when the transaction included purchase of a service contract for the vehicle?*

¶14    Payne challenged Berry's asserted disclaimer of implied warranties of the vehicle under federal and state law.  She argues that the federal Magnuson-Moss Warranty Act (Act), codified at 15 U.S.C. §§ 2301-2312, "bars a seller from disclaiming implied warranties when it also enters into a service contract with a consumer purchaser" and "[s]ince Berry's sold the service contract to Payne, it cannot disclaim implied warranties."  Payne challenges the District Court's conclusion that "Payne purchased the service contract from Wynn, not Berry."  Berry's argued before the Justice Court and the District Court that it sold the service contract only on behalf of Wynn's and did not itself "enter into" a service contract with Payne.

6

¶15    The Act was implemented to prevent deceptive warranty practices and to improve the adequacy of information available to consumers.  15 U.S.C. § 2302(a) (2006).  Under the Act, a dealer's ability to disclaim implied warranties is limited when the dealer "enters into" a service contract covering the consumer product with the consumer.

> (a) Restrictions on disclaimers or modifications.  No supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

15 U.S.C. § 2308(a).  The Act defines a service contract with a consumer as "a contract in writing to perform, over a fixed period of time or for a specified duration, services relating to the maintenance or repair (or both) of a consumer product."  15 U.S.C. § 2301(8).

¶16    The primary legal conclusion upon which the Justice Court and District Court rested their holdings was that the Act did not prohibit Berry's from disclaiming warranties in this transaction because Berry's did not itself "enter into a service contract" with Payne, Wynn's had done so.  15 U.S.C. § 2308(a).  Having so concluded, the District Court did not address Payne's alternate argument—that Berry's did not effectively disclaim implied warranties under state law.  The Justice Court went further than the District Court by also essentially concluding that Berry's had effectively disclaimed any warranties, but did not specifically discuss state law.  Because we believe the issue is resolved under state statutes, we do not address the application of the federal

7

Act. Even if Berry's was not precluded from disclaiming implied warranties by the Act, there remains the question of whether Berry's attempted disclaimer was effective under governing state provisions. As Payne argues, "it is necessary to look to federal law" only if "Montana law does not settle the issue."[3]

¶17 Payne argues that Berry's did not effectively disclaim implied warranties because the language of the sale documents by which Berry's is purporting to disclaim also states that the disclaimer may not apply if a service agreement is purchased, and, thus, does not "make plain" that there is no implied warranty. Payne asserts that "[i]t is certainly not 'plain' that there are no warranties when the disclaimer language indicates it may not apply when the service contract is purchased" and "[t]he common understanding of the qualifying language used by Berry's is that there is an implied warranty if one purchases a service agreement." Berry's argued in the Justice Court and the District Court that it effectively disclaimed any implied warranty by satisfying the requirements for disclaimer under the Montana Uniform Commercial Code (U.C.C.).

¶18 Montana has adopted the U.C.C. to govern sales. *See generally* Title 30, Chapter 2, MCA. The U.C.C. specifically identifies implied warranties for merchantability, § 30-

---

[3] We note that there is a jurisdictional split as to whether a dealer that sells a service contract as an agent for a third party "enters into" the service contract for purposes of § 2308(a) of the Magnuson-Moss Warranty Act. *Compare e.g. Patton v. McHone*, 822 S.W.2d 608, 617 n.16 (Tenn. Ct. App. 1991) ("That [the dealer] was acting as an agent for an extended warranty company when it sold the service contract to the Pattons is of no significance insofar as 15 U.S.C. § 2308(a) is concerned. . . . There is no indication in the language or legislative history of the Magnuson-Moss Act that the service contract must originate with or be the sole responsibility of the dealer.") *with e.g. Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 588 (7th Cir. 2001) (Dealer that sold service contract, which was offered and administered by an unaffiliated third party, acted as an agent and did not "enter into" the service agreement.). As stated, we do not reach this issue herein.

2-314, MCA, and fitness for a particular purpose, § 30-2-315, MCA, for goods sold. These implied warranties apply to sales of consumer goods "unless excluded or modified" pursuant to § 30-2-316, MCA. *See* §§ 30-2-314(1), 30-2-315, MCA. Section 30-2-316, MCA, discusses exclusion of warranties, in pertinent part, as follows:

> (2)   Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous.  Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
> (3)  Notwithstanding subsection (2):
> (a)  unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty[.]

Sections 30-2-316(2), (3)(a), MCA.  Thus, a writing purporting to disclaim implied warranties of merchantability or fitness must be "conspicuous" and state, as an example, "[t]here are no warranties. . ."  Section 30-2-316(2), MCA.  Further, notwithstanding these general rules for disclaimer, an implied warranty may also be disclaimed by use of colloquial language of common understanding, such as a product is being sold "as is," which "makes plain" that there is no implied warranty, unless the circumstances would indicate otherwise.  Section 30-2-316(3)(a), MCA; *see* U.C.C. § 2-316, cmt. 6 (2011) (The exceptions to the general rules in subsection 316(2), as set forth in paragraphs (a), (b), and (c) of subsection 316(3), "are common factual situations in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's

9

attention to the fact that no implied warranties are made . . .”); *see also* James J. White, Robert S. Summers & Robert A. Hillman, *Uniform Commercial Code* §§ 13:11-12, 1104-06 (6th ed., West 2012).

¶19 Here, although three sales documents contain language that is “conspicuous,” provide a message equivalent to the statutory example that “there are no warranties,” and use colloquial “as is” terms, those documents also clearly provide a directly contradictory message. Section 30-2-316(2), (3)(a), MCA. The Retail Installment Contract reads: “You understand that the seller is not offering any warranties . . . unless the seller extends a written warranty or service contract within 90 days from the date of this contract.” The Retail Purchase Agreement states: “We are selling this Vehicle to you AS-IS and we expressly disclaim all warranties . . . unless . . . we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction.” Berry’s argument was that these provisions did not trigger an implied warranty because Berry’s itself did not “extend” or “enter into” the service contract—Wynn’s had done so. However doubtful that argument may be on its face, the language of the Buyer’s Guide was broader and removed any doubt: “If you buy a service contract within 90 days of the time of sale, state law ‘implied warranties’ may give you additional rights.” This provision did not condition implied warranties upon Payne’s purchase of a service contract directly from Berry’s; it only required that a service contract be purchased. Berry’s had employed the colloquial language disclaimer that the Explorer was being sold “as is,” but the circumstances here clearly “indicat[ed] otherwise,” and the contractual provisions that

specifically advised Payne that implied warranty rights may be available if she purchased a service contract negated the colloquial language that "[made] plain" that warranties were disclaimed. Section 30-2-316(3)(a), MCA.

¶20 Consequently, the sales documents used here by Berry's failed to disclaim statutory implied warranties under the requirements of §§ 30-2-316(2), (3)(a), MCA. The District Court thus erred in affirming the Justice Court's holding that Berry's effectively disclaimed implied warranties for the vehicle.

¶21 *2. Did the District Court err by affirming the Justice Court's denial of Payne's implied warranty claim?*

¶22 Establishing the existence of an implied warranty for the vehicle is the first step in pursuit of a breach of warranty claim. The sale documents clearly state that implied warranties under state law *may* apply, and the fact that Berry's failed to effectively disclaim those warranties eliminates only Berry's disclaimer defense to the claim. As the official comments to the U.C.C. explain: "In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained." U.C.C. § 2-314, cmt. 13; *see e.g. Kraft Reinsurance Ir., Ltd. v. Pallets Acquisitions, LLC*, 845 F. Supp. 2d 1342, 1356-57 (N.D. Ga. 2011); *Nev. Contract Servs. Inc. v. Squirrel Cos., Inc.*, 68 P.3d 896, 899 (Nev. 2003). A noted authority on the U.C.C. offers the following summary of the necessary proof:

> First, the claimant must prove that the defendant made a warranty, express or implied, and so incurred an obligation under 2-313, 2-314, or 2-315. Second, the claimant must prove that the goods did not comply with the

11

warranty. Third, the claimant must prove that the injury was caused, proximately and in fact, by the defective nature of the goods. . . . Finally, the claimant must fight off all sorts of affirmative defenses, such as disclaimers, statute of limitations, privity, lack of notice, and assumption of the risk.

James J. White, Robert S. Summers & Robert A. Hillman, *Uniform Commercial Code* § 10:1, 846 (6th ed., West 2012).

¶23   In addition to concluding that Berry's had provided no warranty for the vehicle, the Justice Court entered findings from the evidence regarding the other elements of Payne's breach of warranty claim:

> Payne provided no creditable evidence as to the actual cause of the vehicle's engine problem or the repairs needed. Payne presented no expert testimony as to the cause of the breakdown or the actual cost to repair the vehicle. The vehicle was in the possession of Payne when it broke down. The vehicle had been driven about 2,000 miles by Payne. The breakdown could have been caused by unreasonable use by Payne or her failure to maintain the vehicle. Payne presented no creditable evidence that the breakdown was the result of a patent defect or malfunction.

¶24   After reviewing the testimony introduced at trial, we must conclude that these findings of fact by the Justice Court are not erroneous. Payne testified only that the engine had stopped and a mechanic had removed it. She offered no evidence whatsoever about the engine's particular mechanical problem or what had caused the problem. There was no effort to demonstrate that the engine had stopped operating because it was not in the condition impliedly guaranteed by Berry's, as opposed to any other cause for its failure to operate, such as lack of necessary maintenance.

¶25  Payne's breach of warranty claim failed for lack of evidence necessary to satisfy the elements of breach and causation. The parties also contested damages at trial, but the failure to establish liability makes it unnecessary to address that issue.

¶26  In affirming the Justice Court's judgment in favor of Berry's, the District Court reached the correct result. We will not reverse the district court when it reaches the right result, "even if it reached that result for the wrong reason." *Yellowstone River LLC*, ¶ 58.

¶27  Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER