FILED

04/14/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 20-0189

IN THE SUPREME COURT OF THE STATE OF MONTANA

OP 20-0189

DISABILITY RIGHTS MONTANA,

Petitioner,

v.

MONTANA JUDICIAL DISTRICTS 1-22,
MONTANA COURTS OF LIMITED
JURISDICTION, MONTANA DEPARTMENT
OF CORRECTIONS, and THE MONTANA
BOARD OF PARDONS AND PAROLE,

Respondents.

FILED

APR 14 2020

Bowen Greenwood
Clerk of Supreme Court
State of Montana

ORDER

Petitioner Disability Rights Montana (DRM) has petitioned this Court to exercise its powers of original jurisdiction and supervisory control under Article VII, Section 2, of the Montana Constitution and pursuant to M. R. App. P. 14, and the Court's power to issue writs of mandamus under Title 27, chapter 26, MCA. DRM asks this Court to invoke these powers to immediately reduce the population of Montana jails, prisons, and houses of correction because Montana is under a state of emergency due to the COVID-19 pandemic.

The Petition is denied. DRM has failed to establish that corrections and jail officials have violated a clear legal duty to reduce prisoner populations as requested. DRM also fails to establish that the courts of Montana are proceeding under a mistake of law or causing a gross injustice. Further, DRM has either completely ignored or misrepresented the facts that clearly demonstrate the Executive and Judicial Branches have implemented appropriate and detailed measures for correctional facilities and jails to address the current state of emergency surrounding the critical health and safety issues that must be addressed in light of the emergence of the COVID-19 virus in this State.

DRM alleges it has associational standing to bring this petition on behalf of all disabled prisoners because it is authorized by law to pursue legal remedies to ensure that

disabled individuals in state institutions are protected from abuse and neglect. It argues that subjecting non-dangerous, disabled prisoners to a potential outbreak of COVID-19 violates their right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution and Article II, Section 22, of the Montana Constitution, and their right to due process under the Fourteenth Amendment to the U.S. Constitution and Article II, Section 17, of the Montana Constitution. DRM sets forth a request for relief that includes specific actions it wants Respondents to take to limit the number of individuals currently in custody—both pretrial detainees and sentenced prisoners—and the number of individuals being taken into custody. It suggests this Court appoint a special master to achieve these actions.

We gave the named Respondents the opportunity to respond to DRM's petition. We received responses from several.[1] We also granted leave to file an amicus curiae brief to Public Health and Human Rights Experts.[2] Upon DRM's motion, we granted it leave to file a reply brief. The Court has considered all filings it received in this matter.

As a threshold issue, we must first determine if this Court may take original jurisdiction. Article VII, Section 2, of the Montana Constitution grants this Court original jurisdiction to issue, hear, and determine writs of habeas corpus and such other writs as

---

[1] Montana Department of Corrections and Montana Board of Pardons and Parole (DOC); District Court Judge Hon. Elizabeth A. Best, Eighth Judicial District; Hon. Kelly E. Mantooth, Fergus County Justice of the Peace and Lewistown City Court Judge; District Court Judges Hon. Amy Eddy, Hon. Robert Allison, Hon. Heidi Ulbricht, Hon. Dan Wilson, and Justices of the Peace Hon. Eric Hummel and Hon. Paul Sullivan, Eleventh Judicial District; District Court Judges Hon. Leslie Halligan, Hon. Robert L. Deschamps, III, Hon. John W. Larson, Hon. Jason Marks, and Hon. Shane A. Vannatta, Fourth Judicial District; District Court Judges Hon. Howard F. Recht and Hon. Jennifer B. Lint, Twenty-First Judicial District; Bridger City Court Judge Hon. Bert Kraft, Twenty-Second Judicial District; District Court Judges Hon. Jessica Fehr, Hon. Donald L. Harris, Hon. Michael Moses, Hon. Gregory R. Todd, Hon. Rod Souza, Hon. Mary Jane Knisely, Hon. Colette B. Davies, Hon. Ashley Harada, Standing Masters Molly Rose Fehringer and Laurie Grygiel, and Justices of the Peace Hon. David Carter and Hon. Jeanne Walker, and Billings Municipal Court Judge Hon. Sheila Kolar, Thirteenth Judicial District; District Court Judge Hon. Matthew J. Wald, Twenty-Second Judicial District; District Court Judge Hon. David Cybulski, Fifteenth Judicial District; and Hon. Jessie Connolly, President, Montana Magistrates Association.

[2] Joseph Bick, M.D., Robert L. Cohen, M.D., Kathryn Hampton, MSt, Ranit Mishori, M.D., and Brie Williams, M.D.

may be provided by law, and it grants this Court general supervisory control over all other courts. The procedure for applying for such writs is governed by M. R. App. P. 14.

DRM first argues this Court should exercise supervisory control over the State's Judicial Districts to require a uniform response to the COVID-19 pandemic in all detention and correctional facilities. Under M. R. App. P. 14(3)(a), we will exercise supervisory control over another court in limited circumstances: when urgency or emergency factors exist, making the normal appeal process inadequate; when the case involves purely legal questions; and when "the other court is proceeding under a mistake of law and is causing a gross injustice[.]" As we recently stated, "Our procedure for writ of supervisory control is unique to Montana, and we are loathe to suspend or refashion its criteria." *Barrus v. Mont. First Judicial Dist. Court*, 2020 MT 14, ¶ 20, 398 Mont. 353, 456 P.3d 577. In *Barrus*, we refused to expand the writ to situations in which facts are in dispute. *Barrus*, ¶¶ 17-20. Judge Wald, among other Respondents, argues DRM's petition for writ of supervisory control must fail because there are numerous disputed facts and DRM has not developed a factual record to support its allegations of inaction. We agree this matter is not appropriate for supervisory control because it does not involve purely legal questions.

DRM further argues the Court should accept jurisdiction and issue a writ of mandamus to effectuate the remedies DRM seeks. A writ of mandamus is available if the party who applies for it is entitled to the performance of a clear legal duty by the party against whom the writ is sought. If a clear legal duty exists, a court must grant the writ if there is no speedy and adequate remedy available in the ordinary course of law. The clear legal duty must involve a ministerial, not a discretionary, act. *Smith v. Cty. of Missoula*, 1999 MT 330, ¶ 28, 297 Mont. 368, 992 P.2d 834 (citing § 27-26-102, MCA). A clear legal duty exists only when the law defines the duty with such precision and certainty as to leave nothing to the exercise of discretion and judgment. *City of Deer Lodge v. Chilcott*, 2012 MT 165, ¶ 16, 365 Mont. 497, 285 P.3d 418 (citation and quotation omitted). DRM alleges that Respondents have a clear legal duty to reduce the population of incarcerated individuals to protect disabled prisoners. However, this is not a specific duty contained in statute and it clearly requires the exercise of discretion and judgment. While DRM may

3

have a "policy disagreement" with Respondents, as DOC describes it, DRM has not proven the existence of a clear legal duty to reduce the prison population. Without the existence of a clear legal duty, no writ of mandamus may issue.

DRM further offers that this Court has broad authority to take jurisdiction of original proceedings seeking extraordinary writs. DRM offers nothing further than this general statement. However, even if this Court were to assume original jurisdiction under Article VII, Section 2, of the Montana Constitution and pursuant to M. R. App. P. 14, DRM's substantive arguments would not persuade the Court to insert itself further into this matter.

DRM argues that the constitutional rights of non-dangerous, disabled prisoners are being violated by subjecting them to an "inevitable" outbreak of COVID-19 while incarcerated. Several Respondents, including the Fourth Judicial District, contend DRM has not established that an outbreak is "inevitable." However, it is undisputed that an outbreak is at least as likely, if not more likely, to occur within the confines of a detention center or correctional facility. Prison officials may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475, 2480 (1993).

The government custodian responsible for the custody and care of incarcerated persons has a constitutional duty to provide for the "general well being" and "basic human needs" of incarcerated persons, including but not necessarily limited to food, clothing, shelter, medical care, mental health care, and reasonable safety. *See Wilson v. State*, 2010 MT 278, ¶ 28, 358 Mont. 438, 249 P.3d 28. In order to show an alleged violation of the Eighth Amendment based on an alleged deprivation of adequate health care, an inmate must make an evidentiary showing (1) that the level of health care at issue is constitutionally inadequate from an objective standpoint based either on a pattern of negligent conduct or systematic deficiencies or a serious deprivation resulting in the denial of even a minimal civilized measure of a necessity of life and (2) that the correctional institution acted with deliberate indifference to the inmate's health and safety through a conscious disregard of a substantial risk of serious harm to the inmate's health or safety. *Wilson*, ¶¶ 27-30; *Walker v. State*, 2003 MT 134, ¶ 56, 316 Mont. 103, 68 P.3d 872;

4

*Farmer v. Brennan*, 511 U.S. 825, 840-41, 114 S. Ct. 1970, 1980-81 (1994). "Deliberate indifference" requires that prison officials consciously disregarded a substantial risk of serious harm to an inmate's health or safety. *Walker*, ¶ 55.

Article II, Section 4, of Montana Constitution further guarantees Montanans a fundamental right to human dignity. When the allegations at issue implicate both the Eighth Amendment protection against cruel and unusual punishment and the Montana right to human dignity, we read both together to provide Montanans "greater protection[] from cruel and unusual punishment" than the Eighth Amendment. *Wilson*, ¶ 31 (citing *Walker*, ¶¶ 73, 75). Accordingly, in order to show an alleged violation of the Montana right to human dignity based on an alleged deprivation of adequate health care to inmates in a correctional institutional or detention center, an inmate must make an evidentiary showing (1) that prison officials or conditions subjected the inmate to a substantial risk of serious harm to the inmate's health or safety and (2) that prison officials "acted with deliberate indifference to the inmate's health and safety" through a conscious disregard of that risk. *Wilson*, ¶¶ 30-32; *Walker*, ¶ 73-76.

Both of these tests require the satisfaction of both prongs. Regardless of whether DRM could meet the first prong of either test, we conclude it has not met the second as it has failed to demonstrate that prison officials have acted with deliberate indifference to the health and safety of disabled inmates. DRM contends that "[f]ailure to take action is 'conscious' disregard," but it has not demonstrated that Respondents have failed to take action.

Judge Wald points out in his response that DRM has the burden of persuasion. *See Miller v. 11th Judicial Dist. Court*, 2007 MT 58, ¶ 14, 336 Mont. 207, 154 P.3d 1186 (burden is upon petitioner to convince court to issue writ). He argues that DRM has improperly attempted to shift this burden to Respondents, requiring them "to present facts justifying our actions in response to the crisis, in order to prove Petitioner's relief need not be granted." However, Respondents have provided this Court with ample evidence that they have not failed to take action. For example, the Fourth Judicial District informs us that, among other measures taken to reduce the inmate population, the Missoula County

Detention Facility is not accepting individuals who have been charged, but not convicted, of non-violent misdemeanor offenses under state law or city ordinances, or individuals who have been arrested based on a warrant for failure to appear for court dates related to the same. The Twenty-First Judicial District notes that Judge Recht, the Managing Attorney for the local Office of the Public Defender, the Ravalli County Attorney, and the Ravalli County Sheriff met to formulate a plan to review the status of inmates and assess which could potentially be released without bond under appropriate terms of supervision. As a result, 12 inmates held in felony cases were released on supervision, and five inmates with misdemeanor matters were also released. The Thirteenth Judicial District advises us that the population at the Yellowstone County Detention Facility has been reduced by 25% in three weeks, from 503 inmates on March 16, 2020, to 374 inmates on April 6, 2020, and the Justice Court has released all inmates under its jurisdiction except for three who were identified as violent or posed a danger of harm to an identified victim.

Moreover, this Court has provided the Judicial Branch with guidance on an ongoing basis. On March 17, 2020, the Chief Justice "strongly suggest[ed]" that all District Courts and the Courts of Limited Jurisdiction work with local authorities to evaluate every pretrial defendant and every youth in detention. Montana Supreme Court (Mar. 17, 2020), https://perma.cc/P9J3-T758. On March 20, 2020, the Chief Justice asked the Courts of Limited Jurisdiction to "review your jail rosters and release, without bond, as many prisoners as you are able, especially those being held for non-violent offenses." Letter from Chief Justice Mike McGrath to Montana Courts of Limited Jurisdiction Judges (Mar. 20, 2020), https://perma.cc/H4NN-Q6YJ. On March 27, 2020, the Chief Justice issued an Order for this Court that ordered, in part, that courts shall hear motions for pretrial release on an expedited basis, and:

> The Court finds that for those identified as part of a vulnerable or at-risk population by the Centers for Disease Control, COVID-19 is presumed to be a material change in circumstances, and the parties do not need to supply additional briefing on COVID-19 to the court. For all other cases, the COVID-19 crisis may constitute a material change in circumstances and new information allowing amendment of a previous bail order or providing different conditions of release, but a finding of changed circumstances in any

given case is left to the sound discretion of the trial court. Under such circumstances in juvenile matters, the court may make revisions to detention provisions without a new detention hearing.

*In the Matter of the Statewide Response by Montana State Courts to the COVID-19 Public Health Emergency*, Order (Mar. 27, 2020), https://perma.cc/BK24-4869.

As to DOC's role, on April 1, 2020, the Governor issued a Directive related to the implementation of Montana's current State of Emergency due to the COVID-19 pandemic.[3] In that Directive, Governor Bullock set forth protocols to protect the state inmate population and facilities staff, which included screening all persons arriving at a correctional facility, restricting in-person visitations and off-site appointments and, directly on point with the relief DRM seeks here:

> Providing support to the Board of Pardons and Parole to consider early release for all of the following, but only so long as they do not pose a public safety risk and can have their medical and supervision needs adequately met in the community:
> - Inmates aged 65 or older;
> - Inmates with medical conditions that place them at high risk during this pandemic or who are otherwise medically frail;
> - Pregnant inmates; or
> - Inmates nearing their release date.

In the Directive, Governor Bullock referred to interim guidance for correctional facilities from the Centers for Disease Control and Prevention (CDC).[4] He listed some of the CDC recommendations, such as modifying programming to accommodate social distancing and limit crowding, while further noting that the CDC recognized that its guidance "may need to be adapted based on individual facilities' physical space, staffing, population, operations, and other resources and conditions."

---

[3] *Directive implementing Executive Orders 2-2020 and 3-2020 related to state correctional and state-contracted correctional facilities* (Apr. 1, 2020), https://perma.cc/R5SV-T8YZ.

[4] Centers for Disease Control, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 27, 2020), https://perma.cc/XJP8-ZJ62.

In its petition, DRM provides nothing more than speculation that some judicial districts might not be taking action and a false assertion that Cascade County "has refused to release any individuals because of the COVID-19 pandemic." DRM relies on a news report with a superficially misleading headline in making this assertion. In an article entitled, "Sheriff: no release of inmates from Cascade County jail due to COVID-19," Matt Holzapfel, a reporter/anchor for KRTV, reported on the March 20, 2020 letter from the Chief Justice to the Montana Courts of Limited Jurisdiction Judges.[5] Holzapfel interviewed Cascade County Sheriff Jesse Slaughter, who expressed concern about releasing inmates that were already risk-assessed and determined not to be safe in the community. Sheriff Slaughter informed Holzapfel that as County Sheriff he was one, but not the only, official who could request the release of an inmate. Holzapfel acknowledged in his report that other officials, such as judges, could request the release of inmates. Misleading headline aside, the substance of the news account makes it clear that while the Cascade County Sheriff had chosen not to request that any inmates be released, this Court had directed Cascade County's judges to "release, without bond, as many prisoners as you are able . . . ."

Judge Best's response to DRM's petition also asserts that judges, not sheriffs, bear the responsibility of releasing inmates. She advises that she has been proactively releasing inmates at the time of initial appearance, reducing bail as much as possible for inmates being held, and attempting to find creative pretrial supervision solutions to alleviate the problem. She notes that while Cascade County Detention Center remains overcrowded, "the jail population is at its lowest in years." In reply, DRM comments that Judge Best is but one Judge in the Eighth Judicial District and makes no attempt to correct the false assertion in its petition concerning the release of Cascade County inmates.

DRM further argues that Respondents' failure to act under the current circumstances would violate the due process clauses of the Fourteenth Amendment of the U.S. Constitution and Article II, Section 17, of the Montana Constitution. While DRM

---

[5] Matt Holzapfel, *Sheriff: no release of inmates from Cascade County jail due to COVID-19* (KRTV Mar. 24, 2020), https://perma.cc/P9KL-GCHG.

complains that the responses taken to the danger of a COVID-19 outbreak have not been "uniform" and alleges that some responses have not been adequate, it provides no evidence of deliberate indifference and no specific evidence of failure to act. Therefore, its substantive arguments also must fail.

Finally, we note that individuals who are detained or incarcerated have other remedies available to them, such as a motion for bond reduction under § 46-9-311, MCA. This Court has already ordered the lower courts to hear such motions on an expedited basis. As to the remedies sought by DRM, we believe the Governor's Directive, and its reliance on the CDC interim guidance, best addresses the current crisis. In particular, the CDC's guidance sets forth best practices while recognizing the need for flexibility to accommodate variability in detention centers and correctional facilities.

IT IS THEREFORE ORDERED that DRM's Emergency Petition for Extraordinary Writ, Mandamus Relief, and Writ of Supervisory Control is DENIED.

The Clerk is directed to provide a copy of this Order to counsel for Petitioner Disability Rights Montana, the Attorney General, counsel for the Department of Corrections, the Montana Board of Pardons and Parole, and to the Office of Court Administrator for electronic service on the judges and justices of the Respondent courts.

DATED this _14th_ day of April, 2020.

Chief Justice

9

_____

_____
Justices